## WHITE and others *v*. ARTHUR.[*]

*(Circuit Court, S. D. New York.   January 25, 1882.)*

1. SUITS AGAINST COLLECTORS TO RECOVER DUTIES — LIABILITY OF GOVERNMENT IN.

  A suit against a collector of customs is a private suit, and there is no claim against the government until a certificate of probable cause under section 989, Rev. St., has been obtained from the court; then the government assumes a certain liability.

2. SAME—JUDGMENT IN—LIABILITY FOR INTEREST ON.

  Liability of government for interest on a judgment against collector must be created by statute. It cannot be implied.

3. SAME—REFUNDING OF DUTIES—ACTS OF CONGRESS RELATIVE TO.

  The various acts of congress relative to refunding of duties illegally exacted, and interest thereon, reviewed and commented on, and the conclusion drawn that the liability assumed by government does not include the payment of interest upon judgments recovered against collectors of customs, and that such interest cannot be collected.

[*]Reported by S. Nelson White, Esq., of the New York bar.

4. SAME—INTEREST AS DAMAGES ON WRIT OF ERROR.

The allowance of interest as damages on a writ of error, under section 1010, Rev. St., and under rule 23, Sup. Ct., and the form of mandate affirming, *with interest,* a judgment where collector is plaintiff in error, does not affect the question. They belong solely to putting the judgment in shape.

5. SAME—INTEREST ON JUDGMENT IN—LIABILITY OF COLLECTOR.

There is no personal liability on the part of the collector, after the making of a certificate of probable cause, to pay the interest on judgments obtained against him. Under section 989, Rev. St., he is not liable for such interest if the government is not

*U. S.* v. *Sherman,* 98 U. S. 565, and *Erskine* v. *Van Arsdale,* 15 Wall. 75, cited and explained.

Circular of the commissioner of customs of March 16, 1881, upheld.

At Law.

*Hartley & Coleman,* for plaintiffs.

*Stewart L. Woodford,* Dist. Atty., for defendant.

BLATCHFORD, C. J. This is a suit against a late collector of the port of New York to recover back money paid to him for custom duties, and by him paid into the treasury in the performance of his official duty. On the first of March, 1881, a judgment in this suit was docketed in this court in favor of the plaintiffs, and against the defendant, for $2,295.90. Prior to that, and at the trial of the action, this court, under section 989 of the Revised Statutes, made a certificate of probable cause. It is provided as follows by section 989 :

" When a recovery is had in any suit or proceeding against a collector or other officer of the revenue, for any act done by him, or for the recovery of any money exacted by or paid to him, and by him paid into the treasury in the performance of his official duty, and the court certifies that there was probable cause for the act done by the collector or other officer, or that he acted under the directions of the secretary of the treasury or other proper officer of the government, no execution shall issue against such collector or other officer but the amount so received shall upon final judgment be provided for and paid out of the proper appropriation from the treasury."

On the sixteenth of March, 1881, the commissioner of customs addressed a circular to the first auditor of the treasury, stating that in view of the decision of the supreme court in *U. S.* v. *Sherman,* 98 U. S. 565, and of the decision of the first comptroller of the treasury in *Stephani's Case,* 26 Int. Rev. Rec. 313, nothing would thereafter be allowed or paid by the United States on judgments against customs officers, under section 989, beyond the amount recovered on final judgment, excluding interest on the amount of the judgment. The decision in *U. S.* v. *Sherman* was made at the October term, 1878, and that in *Stephani's Case* in August, 1880.

v.10,no.1—6

Under instructions from the commissioner of customs, dated March 24, 1881, the collector of the port of New York paid to the plaintiffs $2,295.90, the amount of the judgment, which was paid and received without prejudice to the claims of the plaintiffs for interest on the judgment from March 1, 1881. The plaintiffs have never executed any satisfaction piece of the judgment, because the commissioner of customs directed the collector not to require one, in order to enable the plaintiffs to procure a judicial determination of the legality of the said decision of the commissioner of customs of March 16, 1881.

The plaintiffs have not applied to the supreme court for a *mandamus* to compel the secretary of the treasury or other officer to pay the interest in question, but the United States attorney now applies to this court, on the foregoing facts, to require the plaintiffs to execute and deliver a full and complete satisfaction piece of the judgment, or to make an order that full and complete satisfaction of the judgment be entered on the records of the court.

Although the commissioner of customs directed the collector not to require a satisfaction piece, it must be assumed that the present application is made with the consent of the treasury department, and that although it is in form an application by the defendant, it is also an application by the government for the purpose of obtaining a judicial decision as to the liability of the government to pay the interest. It is so treated by both parties. The United States attorney relies wholly on the views taken in the decision in *Stephani's Case*. If the government is liable for the interest, the plaintiffs ought not to be required to now enter satisfaction. But the further question arises whether the plaintiffs are now bound to enter satisfaction, even though the government may not be liable for the interest.

1. The question of the liability of the government to pay the interest will be first considered. The *Case of Stephani* was a judgment against a collector of internal revenue to recover back taxes illegally exacted. It arose under section 989. There was a certificate of probable cause, and the question was whether interest should be paid from the date of that certificate. In his decision the first comptroller says that the practice theretofore in his office had been "to allow interest on judgments from the date of the certificate of probable cause to the time of filing the judgment in the treasury department for payment." He holds that the expression "the amount so recovered," in section 989, "as applied to the government, includes only the sum of the judgment and costs;" that the government is not liable to pay interest by force of section 966, which provides that

interest shall be allowed on all payments recovered in civil causes in a circuit court, because the government is not named nor intended by clear inference; that the doctrine that interest is an incident of the judgment, and so follows the principal, has no application to judgments against the government, or to judgments which the government has by force of a statute assumed to pay; that it is specially provided in some cases that the government shall pay interest on judgments or on debts as in section 1090, and in the act of March 2, 1875, (18 St. at Large, 481,) such provision being necessary, "because at common law interest would not be paid;" and that under section 3220, authorizing the repayment to internal revenue collectors of moneys recovered against them in a court for taxes collected by them, and of damages and costs recovered against them in suits brought against them by reason of anything done in the due performance of official duty, the practice had been to allow interest on such judgments from the time of rendition until paid, but that could "no longer be permitted."

It is contended for the plaintiffs that the measure of the responsibility of the government is the liability of the defendant. There can be no doubt that the liability of the defendant to the plaintiff under the judgment, under section 966 of the Revised Statutes, is not only for the amount of the judgment, but for interest on it, unless that liability is barred by other statutes. It is provided as follows by section 966:

" Interest shall be allowed in all judgments in civil causes recovered in a circuit or district court, and may be levied by the marshal under process of execution issued thereon, in all cases where, by the law of the state in which such court is held, interest may be levied under process of execution on judgments recovered in the courts of such state; and it shall be calculated from the date of the judgment, at such rate as is allowed by law on judgments recovered in the courts of such state."

But the question is whether the government has assumed to its full extent, by section 989, the liability of the defendant. It is very clear that it has not, even without reference to section 966, because by section 989 not only is it necessary that there shall have been a recovery against the collector, but there must be a certificate of probable cause before the liability of the government begins. This is what was decided in *U. S.* v. *Sherman,* a case to which the provisions of section 12 of the act of March 3, 1863, (12 St. at Large, 741,) now section 989 of the Revised Statutes, were applied by section 8 of the act of July 28, 1866, (14 St. at Large, 329.) In that

case there was a judgment in June, 1869, against an agent of the treasury department. There was no certificate of probable cause made till June, 1874, and then it was obtained by the plaintiff in the judgment and not by the defendant. The treasury department then paid to the plaintiff in the judgment the amount of it, with interest from the date of the certificate of probable cause. The plaintiff then applied to the supreme court for a *mandamus* to compel the payment of the interest from the date of the judgment to the date of the certificate. The application was denied. The court held that no claim against the government arose under section 12 of the act of 1863, as applied to that case, until the certificate was made, and that the government was not liable for the interest which accrued on the judgment prior to the making of the certificate.

In the present case the certificate was made before the judgment was entered, but still the question remains whether the government is liable for interest on the judgment from its date if a certificate of probable cause was made prior to or at the time of the date of the judgment. This point was not decided in *U. S.* v. *Sherman.*

It is well settled that the liability of the government for the interest claimed in this case must be created by some statute. There is no contract by the government or any of its authorized agents to pay interest. There is no judgment against the United States. There is no suit against the United States. There is no liability of the United States till after a recovery against the collector and a certificate of probable cause. So the question arises as to the construction of section 989.

"As a general rule the government does not pay interest. The exceptions to this rule are found only in cases where the demands are made under special contracts or special laws, expressly providing for the payment of interest. An obligation to pay it is not to be implied against the government as it is against a private party from the mere fact that the principal was detained from the creditor after the right to receive it had accrued." 9 Op. of Attys. Gen. 59.

The principle that interest is not recoverable against the government if it unreasonably delays payment of its debts, as it would be against a citizen, and the further principle that interest is not to be allowed on claims presented to the defendants unless it is specially provided for, are recognized by the supreme court in *Tillson* v. *U. S.* 100 U. S. 43, 47.

The plaintiffs contend, however, that the interest on the judgment in this case is expressly provided for by statute. A review of the

history of legislation and adjudication in respect to suits against collectors to recover back customs duties illegally exacted, will aid in a decision as to the meaning of the present statutory provisions; and legislation in regard to paying interest on other claims, and on judgments for them, may also be referred to.

Prior to the enactment of section 2 of the act of March 3, 1869, (5 St. at Large, 348,) the moneys paid to a collector of customs for unascertained duties, or for duties paid under protest against the rate or amount of duties charged, were retained by the collector. That act required such moneys to be paid into the treasury, and made it the duty of the treasury department to refund overpayments made under protest out of any money in the treasury not otherwise appropriated. In 1845 it was decided by the supreme court in *Cary* v. *Curtis*, 3 How. 236, that the effect of section 2 of that act was to take away the right to bring an action against the collector for moneys illegally exacted by him as and for duties, and paid to him under protest, where he had paid them into the treasury before suit brought. This decision was followed by the act of February 26, 1845, (5 St. at Large, 727,) which provided that nothing in section 2 of the act of 1839 should be construed to take away the right of any person paying money as and for duties under protest, to a collector, in order to obtain goods imported by him, the duties not being authorized by law, to maintain an action at law against the collector to try the legality and validity of the demand and payment of duties, and to have a trial by jury touching the same, or to authorize the secretary of the treasury to refund any duties paid under protest. This legislation restored the right to sue the collector. Of course a judgment against him could be enforced by execution against him, and under section 8 of the act of August 8, 1842, (5 St. at Large, 518,) now section 966 of the Revised Statutes, interest on such judgment from its date could be collected by execution against him.

On the eighth of August, 1846, an act was passed (9 St. at Large, 84, 675) providing for the payment by the secretary of the treasury to six different parties named of any excess of duties paid by them to the collector of the port of New York upon the importation of certain specified goods beyond what the same were legally chargeable with, and in four of the six cases interest on the excess is specified as to be paid; the direction as to three of the four being that it is to be interest from the time of the payment to the collector. By section 2 of that act the secretary is authorized, out of any money in

the treasury not otherwise appropriated, "to refund to the several persons indebted thereto such sums of money as have been illegally exacted by collectors of customs, under the sanction of the treasury department, for duties on imported merchandise" since March 3, 1833; "provided, that before any such refunding the secretary shall be satisfied, by decisions of the courts of the United States upon the principle involved, that such duties were illegally exacted; and provided, also, that such decisions of the courts shall have been adopted or acquiesced in by the treasury department as its rule of construction."

In this section 2 nothing is said about paying the amounts of judgments or about paying interest on judgments or about paying interest on sums illegally exacted, but it is the sums illegally exacted which are to be refunded, and the refunding is made to depend on the adoption of, or acquiescence in, the decision of the court by the treasury department. There is nothing in this section 2 to indicate that it was limited to cases of duties paid under protest, while under the act of February 26, 1845, suits could be brought against a collector only where duties had been paid under protest. On the tenth of August, 1846, an act was passed (9 St. at Large, 677) directing the refunding to a party named of "the balance remaining unpaid, and interest thereon," of a judgment recovered by him in this court against the collector of this port for the recovery of duties illegally exacted, "a part of which judgment has been heretofore paid." This general and special legislation indicates an intention in congress to specify interest when it is to be paid. Like instances of refunding to parties named duties illegally or erroneously collected on imports, but without mentioning interest, are found in acts passed June 28, 1848, and March 3, 1849, (9 St. at Large, 720, 780.)

The act of March 3, 1857, § 5, (11 St. at Large, 195,) provided for an appeal to the secretary of the treasury, after protest, from the decision of a collector as to the liability of imported goods to or their exemption from duty, and made the decision on such appeal final, unless suit should be brought within 30 days after such decision.

By the act of April 11, 1860, (12 St. at Large, 837,) provision is made for the repayment, with interest at 6 per cent. per annum from the date of exaction, of certain duties illegally exacted as tonnage and light duties; while by the act of March 2, 1861, (Id. 890,) provision is made for the repayment of a certain amount erroneously paid as

duties, nothing being said about interest. Like provisions, with no mention of interest, are made by the acts of May 1, 1862, and February 18, 1863. Id. 903, 917.

By the act of March 3, 1863, § 31, (Id. 729,) the commissioner of internal revenue, subject to the regulation of the secretary of the treasury, was authorized "to remit, refund, and pay back all duties erroneously or illegally assessed or collected, and all judgments or sums of money received in any court against any collector or deputy collector for any duties or licenses paid under protest." That provision referred solely to internal revenue, and is superseded by later provisions of law.

By section 12 of the act of March 3, 1863, (Id. 741,) the provision was enacted which is now found in section 989 of the Revised Statutes, as before quoted. By section 13 of the same act it was made the duty of the district attorney of the district within which any suit should be brought against a collector or other officer of the revenue for any act done by him, or for the recovery of any money exacted by or paid to him, which should have been paid into the treasury of the United States, to appear on behalf of such officer, unless otherwise instructed by the secretary of the treasury, and to make a report in regard to such suits annually to the solicitor of the treasury; and it was directed that the same should be reported annually to congress, "with a statement of all moneys received by the solicitor and by such district attorney" under the act. Most of these provisions of section 13 are now in sections 771 and 773 of the Revised Statutes. By said section 12 it was also provided that when, in any such suit, any district or other attorney should be directed to appear on behalf of such officer by any proper officer of the government, such attorney should be allowed such compensation for his services therein as should be certified by the court to be reasonable and proper, and approved by the secretary of the treasury. This provision is now in section 827 of the Revised Statutes.

By section 7 of the act of March 3, 1863, (12 St. at Large, 766,) now sections 1089 to 1093 of the Revised Statutes, interest on judgments rendered by the court of claims is not to be paid unless the United States has appealed, and then interest at the rate of 5 per cent. per annum is to be paid from the time a certified copy of the payment is presented to the secretary of the treasury for payment.

By section 14 of the act of June 30, 1864, (13 St. at Large, 215,) an appeal to the secretary of the treasury from the decision of the collector of customs, as to the rate and amount of duties, costs, and

charges on imported goods, was provided for, after protest, with the requirement that a suit to recover back the duties should be brought within 90 days after the decision. This is now section 2931 of the Revised Statutes. By section 16 of the same act it was provided as follows:

"Whenever it shall be shown, to the satisfaction of the secretary of the treasury, that in any case of unascertained duties, or duties or other moneys paid under protest and appeal, as hereinbefore provided, more money has been paid to the collector, or person acting as such, than the law requires should have been paid, it shall be the duty of the secretary of the treasury to draw his warrant upon the treasurer in favor of the person or persons entitled to the overpayment, directing the said treasurer to refund the same out of any money in the treasury not otherwise appropriated."

Nothing was said about interest. This provision is now section 3012½ of the Revised Statutes. A provision in regard to the paying back by the commissioner of internal revenue, on appeal to him, of internal revenue duties erroneously or illegally assessed or collected, was enacted by section 44 of the act of June 30, 1864, (Id. 239,) which provided for repaying "to collectors or deputy collectors the full amount of such sums of money as shall or may be recovered against them, or any of them, in any court for any internal duties or licenses collected by them, with the costs and expenses of suit, and all damages and costs recovered against assessors, assistant assessors, collectors, deputy collectors, and inspectors, in any suit which shall be brought against them, or any of them, by reason of anything that shall or may be done in the due performance of their official duties." This enactment is now found in section 3220 of the Revised Statutes.

By section 7 of the act of July 28, 1866, (14 St. at Large, 328,) the secretary of the treasury was authorized to refund duties overpaid, although the provisions of said section 14 of the act of June 30, 1864, had not been complied with, on being satisfied that such non-compliance was owing to circumstances beyond the control of the importer.

By section 3689 of the Revised Statutes, passed June 22, 1874, permanent annual appropriations were made, out of any moneys in the treasury not otherwise appropriated, of such sums as might be necessary for refunding duties erroneously or illegally assessed or collected under the internal revenue laws, and the excess of deposits for unascertained customs duties or customs duties paid under protest.

On the third of March, 1875, (18 St. at Large, 469,) an important act was passed. It provided as follows:

"No moneys collected as duties on imports, in accordance with any decision, ruling, or direction previously made or given by the secretary of the treasury, shall, except as hereinafter provided, be refunded or repaid, unless in accordance with the judgment of a circuit or district court of the United States giving construction to the law, and from which the attorney general shall certify that no appeal or writ of error will be taken by the United States, or unless in pursuance of a special appropriation for the particular refund or repayment to be made: provided, that whenever the secretary shall be of opinion that such duties have been assessed and collected under an erroneous view of the facts in the case, he may authorize a re-examination and reliquidation in such case, and make such refund in accordance with existing laws as the facts so ascertained shall, in his opinion, justify; but no such reliquidation shall be allowed unless protest and appeal shall have been made as required by law."

This does not require a judgment in the particular case, but only a judgment construing the law, which might be had in another case. It does not refer to the payment of a judgment, but to the refunding of moneys collected.

By the act of February 15, 1876, (19 St. at Large, 3,) provision was made for the payment under judgments rendered by the court of commissioners of Alabama claims of said judgments, with interest on the principal at *4 per cent. per annum* from the date of loss until notice should be given for payment.

In section 3 of the appropriation bill, passed June 14, 1878, (20 St. at Large, 128,) is the following provision:

"For repayment to importers the excess of deposits for unascertained duties, or duties or other moneys paid under protest, including interest and costs in judgment cases, $250,000: provided, that no portion of this appropriation shall be expended for the payment of claims known as the 'charges and commissions cases.'"

In section 1 of the appropriation bill passed March 3, 1879, (Id. 384,) is the following provision: "To enable the secretary of the treasury, in his discretion, to refund excess of duties and to pay costs in suits and proceedings in 'charges and commissions cases,' in which judgments may hereafter be obtained, or which may be compromised by said secretary, $15,000."

In section 1 of another appropriation bill passed March 3, 1879, (Id. 414,) is this provision:

"The unexpended balance of the appropriation of $250,000 made by the act of June 14, 1878, for the repayment to importers of the excess of deposits for unascertained duties, or duties or other moneys paid under protest, including interest and costs in judgment cases, is hereby continued and made available for the payment of all claims to which the appropriation is applicable, which

are not payable from the permanent annual appropriation provided for in section 3689 of the Revised Statutes: provided, that the claim known as the 'charges and commissions cases' shall not be paid without further legislation."

The permanent annual appropriation did not include "interest and costs in judgment cases." Hence, probably, the necessity for the special appropriation. The question is, what do the words "interest and costs in judgment cases" mean? Do they include interest after judgment either on the judgment or on the excess of duties? In regard to judgments in "charges and commissions cases," only excess of duties and costs were provided for, nothing being said about interest.

In section 1 of the appropriation bill passed June 16, 1880, (21 St. at Large, 242,) is the following provision:

"For the repayment to importers the excess of deposits for unascertained duties, or duties or other moneys paid under protest, including interest and costs in judgment cases, $300,000; which sum is hereby made available for the payment of all claims to which the appropriation is applicable which are not payable from the permanent annual appropriation provided for in section 3689, Revised Statutes: provided, that no portion of this appropriation shall be expended for the payment of claims known as 'charges and commissions cases.'"

In the same section is the following:

"To enable the secretary of the treasury in his discretion to pay judgments in 'charges and commissions' cases, obtained since January, 1879, and which may be hereafter obtained, or to settle any of said cases, in his discretion, by compromise, $75,000, or so much thereof as may be necessary."

Here the provision is to pay judgments, but nothing is said about interest on judgments. In section 1 of the appropriation bill passed March 3, 1881, (Id. 418,) is a provision in the same words as the one first above cited from the act of June 16, 1880.

It may be admitted that such a suit as the present is a private suit until there is a certificate of probable cause. Then the United States comes in and assumes by statute a certain liability. The question is as to what liability. The plaintiffs contend that the United States assumes all the liability which would be that of the defendant if the United States assumed no liability.

The case of *Erskine* v. *Van Arsdale*, 15 Wall. 75, cited by the plaintiffs, was a suit to recover back an internal revenue tax illegally collected. The court had instructed the jury that they might, in their verdict, add interest to the tax paid. This was held by the supreme court to be correct. The only decision is that interest might be added

from the time of the illegal exaction to the verdict. Nothing is decided as to interest on the judgment, when the government comes to pay it. The interest put into the verdict is put in before there is any certificate of probable cause, and, if there is none, the government assumes no part of the liability of the defendant.

The allowance of interest as damages, on a writ of error under section 1010 of the Revised Statutes, and under rule 23 of the supreme court, and the form of the mandate in affirming with interest a judgment where the collector is the plaintiff in error, cannot affect the question here. These things all of them belong solely to the putting the judgment in shape as one in a private suit. Nor does the language "including interest and costs in judgment cases" mean interest on judgments. It is entirely satisfied by confining it to the interest included in the amount of the judgment and the costs forming part of that amount. The "amount so recovered," referred to in section 989, being more than the amount exacted and paid, because including in addition interest and costs, was probably regarded as needing explanation to make it clear that it was not merely the amount exacted that was to be refunded, but also the interest and costs forming part of the recovery; that is, on the judgment. The mention of "costs" is indicative of the meaning of "interest." There are no costs after judgment; and, as "costs" are costs before judgment, so "interest," in the same connection, is interest before judgment.

The legislation before recited shows that congress has sometimes provided for interest on judgments and sometimes for interest on excessive duties, and has sometimes omitted the mention of interest. The result of this review is that whatever may have been the practice under the permanent appropriation in the Revised Statutes, and under statutes prior to the appropriation bill of 1878, it is clearly expressed in the appropriation bills of 1878, 1879, 1880, and 1881, that where there are judgments against the collectors of customs for duties paid under protest, interest accruing after judgment on the amount of the judgment, or on the duties improperly paid, is not to be paid by the government either from the permanent appropriation or from the special appropriations. Hence, all has been paid by the government in this case which it is obliged to pay.

2. Under section 989, as there has been a certificate of probable cause in this case, there can be no execution against the collector. There cannot be an execution against him for the interest from March 1, 1881, on the view that, under section 966, interest is due on the

judgment as one against the collector personally, and that section 989 only means that there is to be no execution against him for what the government pays. He is required to pay the money into the treasury. He does so. The district attorney is required to defend the suit and is paid by the government for doing so. The suit is one which can be brought only because congress allows it to be brought. Congress could prevent its being brought. It did so by the act of 1839, as was held in *Cary* v. *Curtis.* Then it restored the right by the act of 1845. But the suit is one only "to try the legality and validity of the demand and payment of duties," as the act of 1845 says, when the collector has paid the money into the treasury, and there is a certificate of probable cause, it is clearly the intention of section 989 that the collector shall not be liable under the judgment for interest on it if the government is not liable under that section for interest on it. The object of the suit and the judgment is solely to put the claim into an adjudicated shape; what is to be paid on it either by the collector or the government is a matter to be determined by congress. It follows that the defendant is not liable to pay the interest in question.

As everything has been paid on the judgment which is legally payable on it under existing laws, the judgment is satisfied, and an order will be entered to that effect, and directing that the clerk enter in the records of the court all proper entries to show that the judgment is satisfied.