TREAT, Collector of Internal Revenue, v. FARMERS' LOAN & TRUST CO.

SAME v. CENTRAL TRUST CO. OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

Nos. 154, 155.

1. COURTS (§ 414*)—REQUESTS TO FIND—REVIEW.
    Under the practice in the Second Circuit, questions of law may be raised by requests to find in a case tried to the court, and submitted on an agreed statement of facts.
    ⁓ [Ed. Note.—For other cases, see Courts, Dec. Dig. § 414.*]

2. TRIAL (§ 391*)—FINDINGS—NECESSITY.
    There need be no finding of a fact stated in an agreed statement of facts.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 914; Dec. Dig. § 391.*]

3. APPEAL AND ERROR (§ 934*)—REVIEW—PRESUMPTIONS.
    A judgment for one suing to recover taxes paid under protest requires an assumption on appeal that the trial court found that the tax was paid under protest.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781; Dec. Dig. § 934.*]

4. INTERNAL REVENUE (§ 9*)—BANK CAPITAL.
    The capital and surplus of a trust company permanently invested in stocks and bonds, the bank business being done entirely on deposits, is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not subject to the tax upon capital and surplus used in banking imposed by War Revenue Act June 13, 1898, c. 448, § 2, subd. 1, 30 Stat. 448 (U. S. Comp. St. 1901, p. 2286).

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 9.*]

**5.** UNITED STATES (§ 125*)—ACTIONS.

Since a sovereign can be sued only by his own consent, he may prescribe the conditions on which he will be sued.

[Ed. Note.—For other cases, see United States, Cent. Dig. §§ 113, 114; Dec. Dig. § 125.*]

**6.** UNITED STATES (§ 110*)—INTEREST—COSTS—FEDERAL OBLIGATIONS.

Interest and costs can be awarded against the United States only by congressional warrant.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 93; Dec. Dig. § 110.*]

**7.** INTERNAL REVENUE (§ 38*)—RECOVERY OF TAXES.

On judgment against a collector of internal revenue for taxes paid under protest, costs incurred before judgment and before any certificate of probable cause was granted were properly awarded against him.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 83; Dec. Dig. § 38.*]

**8.** INTERNAL REVENUE (§ 38*)—RECOVERY OF TAXES—RIGHT TO INTEREST.

On judgment against a collector of internal revenue for taxes unlawfully exacted and paid under protest, interest was properly awarded.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 83; Dec. Dig. § 38.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by the Farmers' Loan & Trust Company, and action by the Central Trust Company of New York, against Charles H. Treat, Collector of Internal Revenue. Judgments for plaintiffs (171 Fed. 301, 302), and defendant brings error. Affirmed.

Henry A. Wise, U. S. Atty. (W. L. Wemple, Asst. U. S. Atty., of counsel), for plaintiff in error.

Turner, Rolston & Horan (E. H. Blanc, Frederick Geller, and James F. Horan, of counsel), for Farmers' Loan & Trust Co.

Joline, Larkin & Rathbone (A. H. Van Brunt and Henry V. Poor, of counsel), for Central Trust Co.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. These are two actions at law to recover taxes paid under protest to the defendant, collector of internal revenue for the Second district of New York, and may be disposed of in one opinion. The plaintiffs, trust companies incorporated under the laws of the state of New York, were required to make a return upon their capital and surplus as bankers for taxation under subdivision 1 of section 2 of the war revenue act of June 13, 1898:

"One. Bankers using or employing a capital not exceeding the sum of twenty-five thousand dollars shall pay fifty dollars; when using or employing a capital exceeding twenty-five thousand dollars, for every additional thousand dollars in excess of twenty-five thousand dollars, two dollars, and in estimating capital surplus shall be included. The amount of such annual tax shall in all cases be computed on the basis of the capital and surplus for the

preceding fiscal year. Every person, firm, or company, and every incorporated or other bank, having a place of ·business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or sale, shall he a banker under this act: Provided, that any savings bank having no capital stock, and whose business is confined to receiving deposits and loaning or investing the same for the benefit of its depositors, and which does no other business of banking, shall not be subject to this tax." Act June 13. 1898, c. 448, 30 Stat. 448 (U. S. Comp. St. 1901, p. 2286).

At the trial a jury was waived in writing under sections 649 and 700, U. S. Rev. Stat. (U. S. Comp. St. 1901, pp. 525, 570), and the causes were submitted to Judge Lacombe upon agreed statements of fact. The questions involved are entirely of law. He rendered general judgments in favor of the plaintiffs without special findings of fact or law, but his disposition of certain requests to find the law were duly excepted to. By the practice in this circuit questions of law may be raised in such cases by requests to find. Paul v. D., L. & W. R. Co. (C. C.) 130 Fed. 951, affirmed Delaware, L. & W. R. Co. v. Kutter, 147 Fed. 51, 77 C. C. A. 315. On the subject generally, see Joline v. Metropolitan Securities Co. (C. C.) 164 Fed. 650.

The two actions are exactly alike except that the plaintiff, the Central Trust Company, only protested against payment of the tax upon its surplus, whereas the plaintiff, the Farmers' Loan & Trust Company, protested against payment of a tax either on its capital or its surplus.

The objection that there is no finding that the taxes were paid under protest and duress is unavailing because the agreed statements of facts state that the payments were so made. Moreover, we must assume that the court in directing a general judgment in favor of the plaintiffs so found the fact to be. If the general exceptions filed by the defendant to the effect that the court should have found for the defendant and should not have found for the plaintiffs be held to raise this question, we are authorized to look into the agreed statements of facts, and there we find ample evidence to justify the court's conclusion.

The questions for consideration are whether the capital and surplus of either of the plaintiff companies were subject to the tax and whether interest and costs or either were properly awarded against the defendant.

The agreed statements show that the capital and surplus of both companies are permanently invested in stocks and bonds; that the · only business the companies do as bankers within the definition of banking in the·act is the opening of credits by deposits or collections of money and paying the same out on check, draft, or order and the loaning of money on stocks, bonds, or secured paper. This business is done entirely by means of the depositors' moneys. As the act only taxes the capital and surplus used or employed in banking, we think the circuit judge was entirely right in holding as matter of law that the plaintiffs, not using their capital or surplus in banking, were not subject to the payment of any tax thereon. No doubt they got credit

by the amount of their capital and surplus, but Congress evidently intended to put corporations upon the same basis as individuals, and it would obviously be very unfair to tax an individual upon his whole fortune because he was using a part of it in the banking business.

This brings us to the question whether interest and costs or either of them were properly included in the judgment. As a sovereign cannot be sued except by his own consent, it follows that he may prescribe the conditions upon which he will be sued. The law is clear that interest and costs cannot be awarded against the United States except by legislative warrant. Section 1001, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 713), provides:

"Sec. 1001. Whenever a writ of error, appeal or other process in law, admiralty, or equity, issues from or is brought up to the Supreme Court, or a Circuit Court, either by the United States or by direction of any department of the government, no bond, obligation, or security shall be required from the United States, or from any party acting under the direction aforesaid, either to prosecute said suit, or to answer in damages or costs. In case of an adverse decision, such costs as by law are taxable against the United States, or against the party acting by direction as aforesaid, shall be paid out of the contingent fund of the department under whose directions the proceedings were instituted."

The only costs which this section seems to contemplate are the costs of the appellate court and by rule 24 of the Supreme Court (3 Sup. Ct. xiii) and rule 31 of this court (150 Fed. xxxv, 79 C. C. A. xxxv) costs are not allowed either for or against the United States. The subject was dealt with in this court in Carlisle v. Cooper, 64 Fed. 472, 12 C. C. A. 235, where a judgment for costs and allowances against the United States upon the dismissal of its condemnation proceeding under the Act of August 1, 1888, c. 728, 25 Stat. 357 (U. S. Comp. St. 1901, p. 2576) was reversed because the court found no authority for awarding costs against the United States in such case in the act or in any other act. Many decisions of the Supreme Court are referred to in this opinion.

On the other hand, in United States v. Davis, a customs case, 54 Fed. 147, 4 C. C. A. 251, the Circuit Court of Appeals for the Eighth Circuit held that costs should be awarded against the collector by virtue of the provision in section 15 of the act of June 10, 1890, which provides, "On such original application and on any such appeal, security for damages and costs shall be given as in the case of other appeals in cases in which the United States is a party," read in connection with section 1001, supra. The costs allowed by the court below were those incurred before judgment and before any certificate of probable cause was granted. They were proper as against the individual defendant, collector of internal revenue.

Upon the subject of interest, as damages for delay in payment, the Supreme Court has laid down the general rule very emphatically that it cannot be awarded without legislative warrant against the United States in Tillson v. United States, 100 U. S. 46, 25 L. Ed. 543; Harvey v. United States, 113 U. S. 243, 5 Sup. Ct. 465, 28 L. Ed. 987; Angarica v. Bayard, 127 U. S. 251, 8 Sup. Ct. 1156, 32 L. Ed. 159. We have therefore to inquire whether there is an exception in favor of the plaintiffs in these causes. In Arnson v. Murphy, 109 U. S. 238,

3 Sup. Ct. 184, 27 L. Ed. 920, a customs case, it was held that the customs law of June 30, 1864 (chapter 171, 13 Stat. 202) took away the common-law right of action against the collector and substituted a statutory remedy which was exclusive. Until 1890 actions at law were brought against collectors of customs individually to recover excessive duties. If the verdict of the jury were in favor of the importer, judgment was entered with interest and costs. The government was not liable at all until a certificate of probable cause had been granted under section 989, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 708), and then the collector ceased to be personally liable. Section 989 is as follows:

"Sec. 989. When a recovery is had in any suit or proceeding against a collector or other officer of the revenue for any act done by him, or for the recovery of any money exacted by or paid to him and by him paid into the treasury, in the performance of his official duty, and the court certifies that there was probable cause for the act done, by the collector or other officer, or that he acted under the directions of the Secretary of the Treasury, or other proper officer of the government, no execution shall issue against such collector or other officer, but the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the treasury."

But the customs administration act of June 10, 1890, provided an entirely new system of procedure. The importer's protest went first to the Board of General Appraisers and from its decision an appeal lay to the Circuit Court of the United States, from whose decision an appeal might be allowed to the Circuit Court of Appeals (substituted for the Supreme Court by Act March 3, 1891, c. 517, 26 Stat. 826 [U. S. Comp. St. 1901, p. 488]). Section 15. If the importer's appeal is sustained, the matter is sent back to the customs authorities for liquidation and the amount of the excess paid by the Secretary of the Treasury out of the permanent indefinite appropriation fund provided for in section 24 of the act, without interest or costs. No money judgment is entered. The collector is no longer personally liable at all (section 25), so that under this system no certificate of probable cause is needed or appropriate. The reasoning in Arnson v. Murphy shows that the internal revenue law (U. S. Rev. Stat. §§ 3210, 3226, 3227, 3228 [U. S. Comp. St. 1901, pp. 2082, 2088, 2089]) substitutes a statutory remedy for the common-law remedy. But (differing from customs cases) the action remains an action at law against the collector individually.

In Erskine v. Van Arsdale, 15 Wall. 75, 21 L. Ed. 63, a case under the internal revenue law, the Supreme Court held that interest from the time the taxes were illegally collected to verdict was properly allowed. The question of interest after judgment was apparently not under consideration. Mr. Chief Justice Chase said:

"The third exception is to the instruction that, if the jury found for the plaintiff, they might add interest. This was not contested upon the argument, and we think it clearly correct. The ground for the refusal to allow interest is the presumption that the government is always ready and willing to pay its ordinary debts. Where an illegal tax has been collected, the citizen who has paid it, and has been obliged to bring suit against the collector, is, we think, entitled to interest in the event of recovery from the time of the illegal exaction."

In United States v. Sherman, 98 U. S. 565, 25 L. Ed. 235, which arose under the captured and abandoned property acts of March 12, 1863 (chapter 120, 12 Stat. 820), and July 2, 1864 (chapter 225, 13 Stat. 375), the certificate of probable cause was granted five years after judgment. The question was whether the plaintiff had a right to interest between the time judgment was entered and the time the certificate was granted. The court held he had not, because the United States was not liable, nor was there any authority to pay the judgment out of the treasury under section 12 of the Act of March 3, 1863 (chapter 76, 12 Stat. 741), now U. S. Rev. Stat. § 989, until the certificate had been granted.

In Cochran v. Schell, 107 U. S. 625, 2 Sup. Ct. 827, 27 L. Ed. 543, a customs case, judgment was rendered for the amount of excessive fees exacted by the collector with interest from the time of payment and a certificate of probable cause was granted. Upon a writ of error by the United States the Supreme Court, speaking through Mr. Justice Blatchford, affirmed the judgment with interest until paid. The Solicitor General moved to strike this provision out of the mandate, but the court held that interest was allowable after the certificate of probable cause until payment of the judgment. It was considered that the judgment was not a final judgment within U. S. Rev. Stat. § 989, until the new judgment had been entered upon the mandate, which judgment should be entered with interest in accordance with Supreme Court Rule 23 (3 Sup. Ct. xiii) and section 966, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 700), especially as the writ of error operated as a stay under sections 1000 and 1001, U. S. Rev. Stat., without a bond to answer in damages being given. It is interesting to note that the opinion of Judge Blatchford at circuit in White v. Arthur (C. C.) 10 Fed. 80, in which he held that neither the collector nor the United States was liable for interest accruing after the granting of the certificate was disapproved.

The remedy in case of protests under the internal revenue law is, as formerly under the customs law, by actions at law against the collector personally and the reasoning in the case of Cochran v. Schell, supra, which was decided before the passage of the customs administration law, applies to suits against collectors of internal revenue. In such suits under the war revenue act of 1898, the Circuit Court of Appeals for the Third Circuit in McClain v. Pennsylvania Co., 108 Fed. 618, 47 C. C. A. 529, and the Circuit Court of Appeals for the First Circuit in Kinney v. Conant, 166 Fed. 720, 92 C. C. A. 410, have held that interest was properly allowed. We take the same view. The judgments are affirmed, with interest, but by virtue of rule 31, without costs of this court.