REAL ESTATE TITLE INS. & TRUST CO. v. LEDERER, Collector of Internal Revenue.

(District Court E. D. Pennsylvania. June 25, 1923.)

No. 4656.

Internal revenue ⊕➾9—Statute imposing tax on capital used in banking construed.

Under Act Oct. 22, 1914, § 3, imposing a tax on capital used or employed in banking, a trust company having five different departments was not taxable on its entire capital, surplus, and undivided profits, but only upon such portion thereof as was used or employed by it in banking, and in view of the presumption that Congress in enacting the statute intended its language to have such construction, as being the construction which the courts had given similar language in Act June 13, 1898, evidence of the history of the enactment of the 1914 statute and prior decisions construing earlier acts and treasury decisions construing similar acts were immaterial.

At Law. Action by the Real Estate Title Insurance & Trust Company against Ephraim Lederer, Collector of Internal Revenue. On trial without jury on agreed statement of facts. Judgment for plaintiff.

Plaintiff's request for additional finding 18, which was affirmed by the court, is as follows:

"During the calendar year 1915, the plaintiff had capital, surplus, and undivided profits amounting to $2,671,183.56, of which $173,114.69 was used or employed in banking, and the balance, viz. $2,498,068.87, was not used or employed in banking."

Plaintiff's request for conclusion of law 1, which was adopted by the court, is as follows:

"The plaintiff is liable for a tax only on that portion of its capital, surplus, and undivided profits which is used in banking."

Saul, Ewing, Remick & Saul and Allen S. Olmsted, 2d, all of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., of Philadelphia, Pa., and Nelson T. Hartson, Sol. of Internal Revenue, and S. Duffield Mitchell, Sp. Atty. Internal Revenue, both of Washington, D. C., for defendant.

---

⊕➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMPSON, District Judge. The plaintiff brings suit to recover the sum of $1,248.44 alleged to have been illegally collected by the defendant on September 9, 1916, as special tax due for the taxable period from July 1, 1916, to December 31, 1916, under section 3 of the Act of October 22, 1914 (38 Stat. 750). The plaintiff's business during the period in question was divided among five different departments, namely, title insurance department, trust department, safe deposit department, real estate business, and banking department. In its return it admitted tax liability in the sum of $59, calculated on the sum of $119,971.96, which was the amount of its loans on collateral which was paid. A tax of $1,335.50 was assessed at the rate of $1 upon each $1,000 of its total capital, surplus, and undivided profits, amounting to $2,671,183.56, for the preceding fiscal year. This amount was paid under protest.

It is admitted that the loans on collateral amounted to $129,114.69 and that the portion of the building used by the banking department is valued at $44,000. The plaintiff concedes its liability for the tax upon a total of $173,114.69 in the sum of $86.56 and asks judgment as a refund in the sum of $1,248.44. Section 3 of the Act of 1914 was construed by the Circuit Court of Appeals for this circuit in a suit between the same parties arising out of substantially similar facts in relation to the distribution of the business of the corporation in Real Estate Title Insurance & Trust Co. v. Lederer (C. C. A.) 263 Fed. 667, and it was there held that the plaintiff was not taxable on its entire capital, surplus, and undivided profits, but only on such portion thereof as was used or employed by it in banking. See, also, Lederer v. Real Estate Title Insurance & Trust Co. (C. C. A.) 273 Fed. 933.

In paragraphs 18, 19, 20, and 21 of the agreed statement of facts in the instant case there is set out the report of the committee on finance of the United States Senate upon the House bill which was finally passed as the War Revenue Act of October 22, 1914, in which was incorporated the address of the President of the United States showing the necessity of raising at least $100,000,000 in additional revenue. There was also annexed the report of the chairman of the committee on ways and means of the House, showing the estimated government revenues if the House bill should become a law. A communication from the Secretary of the Treasury to the Senate showed that he estimated upon the basis of information furnished him that the special taxes to be collected from bankers would annually equal $4,300,000.

There is also attached to the statement of agreed facts an affidavit by Mr. Joseph S. McCoy, government actuary under control of the Secretary of the Treasury, to the effect that, under instructions from the Secretary, he had estimated that the probable revenue or tax to be derived from the special tax on bankers would amount to the sum of $4,300,000; that he based his estimate upon the total capital, surplus, and undivided profits of all of the national banks, state banks, mutual and stock saving banks, loan and trust companies, and private banks which amounted to $4,346,689,222.42; and that he thus estimated the revenue or tax to be derived for a full year from the bankers' special tax, on the basis of $1 tax on each $1,000 of the aggregate capital, surplus, and undivided profits in the preceding year, at the sum of $4,300,000.

The defendant's contention, based on this history of the legislation, is that it proves that Congress intended trust companies to be taxed in the same manner and to the same extent as banks, and that therefore the decisions of the courts to the contrary are in disregard of the intent of Congress, as shown by the history of this legislation during the time the bill was pending in Congress. From the facts that are presented, it is apparent that the Secretary of the Treasury estimated in his communication to the Senate that $4,300,000 would be annually raised under the proposed special tax upon bankers, and that his estimate was based upon that furnished him by Mr. McCoy. It does not follow, however, that Congress had under consideration the aggregate of the capital, surplus, and undivided profits of all of the institutions in the country that were engaged either wholly or partly in banking as defined in the act. There is nothing even to show that that aggregate was included in the communication of the Secretary of the Treasury to the Senate, nor that the Secretary had it before him. The figures upon which Mr. McCoy based his final estimate of a probable revenue of $4,300,000 are not shown to have been in any manner made known to either the Senate or the House. The basis upon which his final figures were arrived at, therefore, cannot be held to be the basis upon which the court can find an intent on the part of Congress to change the effect of the language it used in the act, as construed in respect to similar language in the War Tax Act of June 13, 1898 (30 Stat. 448), by Judge Lacombe in Central Trust Co. v. Treat (C. C.) 171 Fed. 302, and affirmed by the Circuit Court of Appeals of the Second Circuit in Treat v. Farmers' Loan & Trust Co., 185 Fed. 762, 108 C. C. A. 98. It was held by Judge Buffington, in Real Estate Title Insurance & Trust Co. v. Lederer, supra, that, as Congress had before it the final decision of a court of last resort, which the government had not attempted to have reviewed by the Supreme Court, it should be deemed to have used the words in the light of the decision of the Circuit Court of Appeals.

It is further contended by the defendant that, as to the language defining bankers in the War Revenue Acts of 1864 (13 Stat. 223), 1866 (14 Stat. 98), and 1898 (30 Stat. 448), the interpretation by the Treasury Department and construction by the courts in the early cases shows that Congress in the Act of 1914 enacted such prior construction as part of the latter act. To sustain this contention, counsel for the defendant relies upon the decision of Judge Shipman in the Circuit Court of New York in United States v. Farmers' Loan & Trust Co., decided February, 1866, Fed. Cas. No. 15,070, and upon treasury rulings under the acts of 1864, 1866, and 1898. If Congress had in mind only the early decision of Judge Shipman and the treasury rulings under prior acts which are cited in the defendant's brief, the contention would be entitled to great weight but we are confronted under this contention, as under the one last considered, with the fact that the Act of 1898, which was the last act prior to that of 1914 using the same language in defining bankers, had been construed by Judge Lacombe in Central Trust Co. v. Treat (C. C.) 171 Fed. 301, affirmed February 14, 1911, in Treat v. Farmers' Loan & Trust Co., 185 Fed. 760, 108 C. C. A. 98, by the Circuit Court of Appeals of the Second Circuit. And it has

since been similarly construed by the Supreme Court in Fidelity & Deposit Co. of Maryland v. United States, 259 U. S. 296, 42 Sup. Ct. 511, 66 L. Ed. 948.. It must be assumed, therefore, that Congress, in using the same language in the Act of 1914 as in the prior Act of 1898, intended to use it in the sense in which the courts had construed it. Real Estate Title Insurance & Trust Co. v. Lederer, supra.

The parties have presented requests for findings of fact and conclusions of law, which are filed herewith and disposed of as follows:

## Findings of Facts.

Paragraphs 1 to 17 of the agreed statement of facts are adopted as the findings of the court.

Paragraphs 18 to 21, inclusive, are declined as irrelevant and incompetent.

The plaintiff's request for additional finding 18 is affirmed.

The defendant's request for additional findings of fact is declined as immaterial and incompetent.

## Conclusions of Law.

The conclusions of law requested by the plaintiff, paragraphs 1 to 7, inclusive, are affirmed and adopted as the conclusions of the court.

The request of the defendant for conclusion of law, paragraph 1, is affirmed and adopted as the conclusion of the court.

The remaining paragraphs, 2 to 8, inclusive, of the defendant's requests for conclusions of law, are declined.

Let judgment be entered in favor of the plaintiff in the sum of $1,248.44, with interest from September 9, 1916.

---

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes