CLARK, IN RE. See Cases Nos. 2,842–2,844.

CLARK (ABBE v.).   See Case No. 5.

# Case No. 2,813.

## CLARK v. BAILEY.

[Nowhere reported; opinion not now accessible.]

# Case No. 2,814.

## CLARK et al. v. BAILEY.

## WORK et al. v. BAILEY.

[12 Blatchf. 156; [1] 19 Int. Rev. Rec. 207.]

Circuit Court, S. D. New York.   June 16, 1874. [2]

INTERNAL REVENUE—TAX ON BANK CAPITAL—"DEPOSITS OF MONEY SUBJECT TO CHECK OR DRAFT."

1. Whether the mere business of buying, carrying and selling stocks for others, on the deposit of money or property as a "margin" for their security, would come within the definition in the 79th section of the act of June 30, 1864 (13 Stat. 251), as originally enacted, and as amended by the 9th section of the act of July 13, 1866 (14 Stat. 115), describing "bankers," quere.

2. Section 110 of the said act of June 30, 1864 (13 Stat. 277) as amended by the 9th section of the said act of July 13, 1866 (14 Stat. 136), declaring that there shall be levied, collected and paid "a tax of one twenty-fourth of one per centum, each month, * * * upon the capital of any bank, association, company or corporation, and on the capital employed by any person in the business of banking, beyond the average amount invested in United States bonds," does not authorize or justify the levy or collection of a tax of one twenty-fourth of one per centum upon money borrowed, in the ordinary course of business, by a copartnership firm engaged in the business of banking.

3. A tax of one twenty-fourth of one per centum each month, upon the average amount of the deposits of money subject to payment by check or draft, is leviable and collectable, under said section 110, even though interest at an agreed rate is allowed and paid on such deposits.

4. But, securities or money left as a pledge, for indemnity, to save the pledgee from loss on purchasing or selling stocks for his customer, are not "deposits of money subject to payment by check or draft."

[See note at end of case.]

[At law. Separate actions by Luther C. Clark and others, comprising the firm of Clark, Dodge & Co., and by Frank Work and others, against Joshua F. Bailey, collector of internal revenue, to recover back taxes imposed and collected.]

John E. Burrill, for plaintiff.

George Bliss, Dist. Atty., for defendant.

WOODRUFF, Circuit Judge. 1. I am of opinion, that, at the respective times when the taxes were imposed and collected, for recovering back which the plaintiffs in the first above named action bring their suit, they were bankers doing business as such, within the definition given in the acts of congress of June 30, 1864, and July 13, 1866 (13 Stat. 251, § 79; 14 Stat. 115, subd. 1). Besides their business of purchasing stocks, advancing money therefor, and, in the language of those engaged in such business, "carrying them on a margin," they had "a place of business where credits were opened by the deposit of money * * subject to be paid upon draft, check, or order."

Whether the mere business of buying, carrying, and selling stocks for others, on the deposit of money or property as a "margin" for their security, would come within the definition in the statute describing "bankers," and, therefore, whether the plaintiffs in the second above suit are or are not bankers, the conclusion I have formed on the point next to be stated renders it unnecessary to determine. They did no other business.

2. I am of opinion that the terms of section 110 of the act of June 30, 1864, as amended by the 9th section of the act of July 13, 1866 (13 Stat. 277; 14 Stat. 136), declaring that there shall be levied, collected, and paid "a tax of one twenty-fourth of one per centum, each month, * * upon the capital of any bank, association, company, or corporation, and on the capital employed by any person in the business of banking, beyond the average amount invested in United States bonds," do not authorize nor justify the levy or collection of a tax of one twenty-fourth of one per centum upon money borrowed, in the ordinary course of business, by a copartnership firm engaged in the business of banking.

The term "capital," in the statute, has its ordinary signification, as universally used in trade, commerce, manufacturing, and other specific business. It is that stock in trade which, irrespective of particular transactions or dealings, constitutes the basis of credit, or the fund belonging to the person, invested in the business. It is money or property appropriated to the purposes of the business of a person or firm, analogous to the capital in a corporation, derived or derivable from the contribution of stockholders, and denominated "capital stock."

Under the act of June 30, 1864, there was some uncertainty in the application of the terms used, when applied to a mere individual or firm. By the 110th section of that act (13 Stat. 277) the tax was directed to be levied each month "upon the average amount of the capital of any bank, association, company, or corporation, or person, engaged in the business of banking, beyond the amount invested in United States bonds." When a person was found engaged in the business of banking, it was not clear that, as he answered the description in the statute, the tax was not to be levied on all of his capital, however invested or employed. The same individual

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirmed in Bailey v. Clark, 21 Wall. (88 U. S.) 284.]

or firm might be engaged in the business of banking, and, at the same time, have capital employed in manufacturing or otherwise. In a comprehensive sense, his or their capital would embrace all, and it might, perhaps, not be permitted to hold that the capital to be taxed was, under that statute, only such part of his capital as was employed in banking. The act of 1866 removed this doubt. Where an individual or firm appropriated a portion of his or their capital to manufacturing or other distinct business, and another portion to the business of banking, this statute of 1866 made a discrimination, and confined the tax to the latter. So, it might often be true of an individual, that, in reliance upon his known wealth, he commenced and carried on a large business as a banker, when the largest portion of that wealth was invested in real estate. In popular sense, such a man is called a "capitalist," defined to be "usually a man of large property, which is or may be employed in business." Under the act of 1864, what was the "capital" of such a person? It was not easy to say, unless, by construction, it was held to mean, what the act of 1866 makes it mean, the capital employed in the business of banking, i. e., such portion of his wealth as he might, either at the beginning, or from time to time, withdraw from other investment or other uses, and employ, either in the form of money or securities or property, for the carrying on of his business as a banker.

In the case of a copartnership, the meaning of the term "capital" is very closely analogous to the same term applied to a corporation. It is the capital stock, or stock in trade. It is the basis of the joint adventures —the contribution of the several copartners —a ground upon which, in general, distribution of profits proceeds, in whole or in part.

The plaintiffs in each of these cases are a copartnership firm, having a capital contributed. in money or property, to the uses of the joint business. In a supposable case, such capital may not be limited to the original contribution, nor even to any definite sum named in articles of copartnership, but may include successive further contributions or advances by the partners for the purposes of such business. On that possible case, it is. however. not material to dwell, as nothing in these cases raises such a question. It is suggested in order to avoid a different inference from what it is intended to hold. So, also, in a supposable case, the capital of a firm may consist, in part, or even in whole, of money or property borrowed to be employed as capital, as the basis of the financial reputation and credit of a firm, and, as between the lender and the creditors of the firm, to be at the risk of the business. No doubt, a member of a copartnership often borrows a portion, and sometimes the whole, of his contribution to the capital stock, from personal friends. It may be

lent for the very purpose of such contribution, and so become, in every sense, a part of the capital or stock in trade. No doubt, all of the members of a copartnership, and even the firm in its joint capacity, may procure such special advances, to be placed, as between the lenders and the copartnership creditors, at the risk of the business, as the basis of copartnership credit, and to constitute the fund to which creditors may look as their security, before the lender is permitted to withdraw it. This suggestion is also made in order to exclude the contrary inference, and not because any such state of facts exists in these cases.

It is not according to the ordinary use of language, and, as I think, not according to any proper use of language, to say, of a mercantile firm, that every discount which they procure at bank is so much added to their capital; and yet, if they buy goods with the proceeds, they use such proceeds in their business. It would not satisfy the demands of common honesty, if a man, engaged in business of any kind, being asked the amount of capital employed in his business, should include in his reply all the sums which, in the conduct of his business, he had borrowed and had not yet repaid. When the debts of a copartnership are paid, what remains is capital, or capital and profits, as the case may be.

The argument in support of the tax on money borrowed in the ordinary course of the business, assumes that "capital employed by any person in the business" means precisely what "the money or property employed by any person in the business" would mean, and so it includes all money, however derived. This begs the whole question. It deprives the word "capital" of any distinctive meaning. It withdraws it from its intimate association with the other part of the sentence, and the meaning of the same word, "capital" there applied to an association or company. It overlooks the consideration, that no reason exists why a copartnership should pay this tax on borrowed money, when an association or company, (not necessarily incorporated,) in any other form, should not. It would give to the term "capital" a new and unusual meaning. It would make every bank discount an addition to capital. The statute does not so read. It would have been easy, very easy, to say so in terms, if congress had so intended.

It is not an insignificant circumstance, that, by the act of June 6, 1872, 17 Stat. 256, congress expressly enacted, that the words "capital employed," in said 110th section, "shall not include moneys borrowed or received from day to day, in the usual course of business, from any person not a partner of, or interested in, the said bank, association, or firm." It is possible to say that this statute changed the law. But it seems to me that the language is better

adapted to declare the construction and meaning of the law. It would have been easy and appropriate, if that alone was the design, to say that hereafter money so borrowed shall not be liable to the tax. My opinion, that the terms employed did not include money so borrowed, renders it unnecessary to do more than say that this further enactment is not inconsistent with that view, and may well have been passed in order to remove any doubt theretofore entertained on the subject.

I have not overlooked the suggestion in behalf of the defendant, that this construction of the statute enables persons having a very small capital to carry on a very large business of the kind now in question—buying stocks on commission, "carrying" them, by borrowing thereon the amount required to pay for them, and selling them when directed by the customer, and paying the loan without paying the specified tax on the money used for the purpose. This may be so. I do not know how large a capital may be necessary to the establish-ment of such a financial credit as will secure to a person or a firm a large patronage from stock dealers or speculators. But the answer is, that the statute does not declare money borrowed for the purposes of the ordinary and daily conduct of the business, taxable. Had it been intended to tax such money, it was easy to say so. If the evil urged required remedy, it was easy to correct it, and it was for the legislature to correct, and it is not for the courts to give a forced and unnatural meaning to language, for that purpose.

The result of these considerations is, that the tax levied and collected from these plaintiffs in both cases was illegal, and the necessary preliminary proceedings, protest, appeal, and suit in due season, having, as admitted, been taken by them, they are entitled to recover.

3. As to the firm of Clark, Dodge & Company, the plaintiffs in the first of the above named cases, I am of opinion that they were liable to the tax levied and collected, each month, upon the average amount of the deposits of money subject to payment by check or draft. That they received such deposits in their business is distinctly proved, and the amounts are shown, entirely distinct from moneys borrowed, in the statements put in evidence. The circumstance that they allowed and paid their depositors interest, at some agreed rate, does not affect this question. The same is done in favor of depositors by very many duly incorporated banks in this city and elsewhere. But, securities or money left with either of the above plaintiffs as a pledge for their indemnity, to save them from loss on purchasing or selling stocks for the customer, are not of this character. They are not "moneys subject to payment by check or draft," in any just sense of those terms, as applied to moneys deposited with a bank or banker.

Judgments in these cases must be entered for the plaintiffs, in conformity with this opinion. The amounts are mere matters of computation, from the statements of the taxes paid, admitted and used on the trial. If the parties do not agree on the computation, I will settle the amount on entering the judgment herein.

[NOTE. "The term 'capital' employed by a banker in the business of banking, in the 110th section of the revenue act of July 15, 1866, does not include moneys borrowed by him from time to time temporarily, in the ordinary course of his business. It applies only to the property or moneys of the banker set apart from other uses and permanently invested in the business." Mr. Justice Field, in Bailey v. Clark, 21 Wall. (88 U. S.) 284, on error by the plaintiff to the circuit court.]