### OLD COLONY TRUST CO. v. MALLEY, Internal Revenue Collector.

(District Court, D. Massachusetts. March 22, 1923.)

No. 878.

**1. Internal revenue ⬤⇒9—Capital employed by trust company in banking measured by ratio of banking assets to total assets; "banking business."**

Under War Revenue Act Oct. 22, 1914, § 3 (1), imposing a tax on bankers, measured by the capital used or employed, where a trust company is engaged in several branches of business requiring capital, including banking, the proportion of its capital, surplus, and undivided profits subject to the tax is measured by the proportion of its total assets employed in its "banking business."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Banking.]

**2. Internal revenue ⬤⇒9—"Banker" is defined by War Revenue Act.**

War Revenue Act Oct. 22, 1914, § 3 (1), imposing a tax on bankers, defines "banker" for the purposes of the act, and the part of the capital of a trust company, engaged in other branches of business besides banking, subject to tax under the act, is that employed in one or more

of the three kinds of, business enumerated therein as constituting the business of a banker.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Banker.]

**3. Internal revenue ⬤⟞9—Capital of trust company presumed invested ratably in total assets.**

In determining the proportion of the capital of a trust company subject to tax as a banker, under War Revenue Act Oct. 22, 1914, § 3 (1), it is to be presumed that its capital, surplus, and undivided profits are invested ratably in its total assets, in the absence of proof of the contrary.

At Law. Action by the Old Colony Trust Company against John F. Malley, Collector of Internal Revenue. Judgment for plaintiff.

Pillsbury, Dana & Young, of Boston, Mass., for plaintiff.

Robert O. Harris, U. S. Atty., of Boston, Mass., Frederic S. Harvey, Asst. U. S. Atty., of Lowell, Mass., and S. Duffield Mitchell, Sp. Atty. Treasury Department, of Washington, D. C., for Internal Revenue Dept.

BREWSTER, District Judge. The plaintiff in this action seeks to recover a portion of the taxes assessed upon and paid by it under the provisions of section 3, paragraph 1, of the War Revenue Act, approved October 22, 1914 (38 Stat. 750). The taxes in dispute cover the periods:

(a) November 1, 1914, to June 30, 1915;
(b) June 30, 1915, to December 31, 1915;
(c) December 31, 1915, to June 30, 1916; and
(d) June 30, 1916, to December 31, 1916.

In the War Revenue Act, imposing a special tax on bankers of $1 for each $1,000 of capital used and employed, Congress laid down the rule for determining who was a banker within the meaning of the act.

In the case now under consideration it is conceded that the plaintiff is a banker within the definition of the act. It admits also that it uses and employs capital, surplus, and undivided profits as such banker, and is therefore liable to the special tax imposed by the act. The controversy arises over the amount of the capital, surplus, and undivided profits (hereafter the word "capital" may be deemed to include surplus and undivided profits) upon which the tax should be assessed.

From the findings of fact it clearly appears that the plaintiff during the years in question was engaged in several other distinct lines of business. It maintained:

(1) A trust department, in which it carried on the business of acting as executors, trustees, or other fiduciaries, and as agent;

(2) A transfer department, in which it acted as transfer agent and registrar of stocks and registered bonds;

(3) A safe deposit department, in which it provided a method of safekeeping for securities for the public and for itself;

---

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

(4) A reorganization department, in which it acted as depositary for stocks and bonds in reorganization proceedings;

(5) A bond department, in which it sold bonds and stock to a limited extent; and

(6) A savings department, in which it received savings deposits and loaned and invested the same.

The tax for the years ending June 30, 1914, June 30, 1915, and June 30, 1916, was assessed upon the total capital of the plaintiff, who paid under protest, denying the right of the defendant to collect the full amount of tax as assessed.·

Two questions are presented for consideration: (1) Is the plaintiff liable for a tax measured by the total capital used and employed by it, or should the tax be measured by the capital employed by it in the business of banking as distinguished from its other businesses above enumerated; and (2) if the tax is to be measured by the capital employed in its business of banking, are the words "business of banking" to be given their usual meaning as popularly understood in the commercial world or shall they be limited to the three kinds of business described in the act?

[1] First. Is the tax to be assessed upon the entire capital of the plaintiff? It is the contention of the government that the act of 1914 so provides. In dealing with this question it will be helpful to consider the history of the legislation.

Statutes levying license fees or special tax on bankers were first enacted in 1864, when an act was passed providing that no person, firm, company, or corporation shall be engaged in, prosecute, or carry on any trade, business, or profession hereinafter mentioned and described until he or they shall have obtained a license therefor in the manner hereinafter provided. 13 Stat. c. 173, § 71. Section 79 of the act provided that there should be paid annually for each license granted the sum therein stated, respectively, and among others it contained the following provisions:

"One. Bankers, using or employing a capital not exceeding the sum of fifty thousand dollars, shall pay one hundred dollars for each license; when using or employing a capital exceeding fifty thousand dollars, for every additional thousand dollars in excess of fifty thousand dollars, two dollars. Every person, firm, or company, and every incorporated or other bank, having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or sale, shall be regarded a banker under this act."

The same act also provided in section 110 for a duty of one-twenty-fourth of 1 per cent. each month "upon the average amount of the capital of any bank, association, company, or corporation, or person engaged in the business of banking beyond the amount invested in United States bonds." Under the act of 1864 question arose as to the amount of tax which should be assessed upon an individual engaged in the banking business who answered the description of a banker in the statute. As was pointed out in Clark v. Bailey, 12 Blatchf. 156, Fed.

Cas. No. 2;814, the same individual might be engaged in the business of banking and at the same time have capital employed in manufacturing or otherwise.

"In a comprehensive sense, his or their capital would embrace all, and it might, perhaps, not be permitted to hold that the capital to be taxed was, under the statute, only such part of his capital as was employed in banking."

Obviously to remove this doubt, an act was passed in 1866 which drew a distinction between incorporated banks and individuals. In the case of the incorporated bank the tax was based upon the capital, and in the case of individual upon the capital used or employed by him. This distinction applied both to the license fee and to the duty of one-twenty-fourth of 1 per cent. (14 Stat. c. 184, § 9). Thus banks chartered or organized under a general law *with a capital* not exceeding $50,000, and bankers *using or employing a capital* not exceeding the sum of $50,000, paid the license fee of $100, and a tax of one-twenty-fourth of 1 per cent. each month was levied on the *capital* of any bank, association, company or corporation and upon the *capital employed by any person in the business of banking* beyond the average amount invested in United States bonds.

Referring again to the opinion of the court in Clark v. Bailey, we find this language:

"Where an individual or firm appropriated a portion of his or their capital to manufacturing or other distinct business, and another portion to the business of banking, this statute of 1866 made a discrimination, and confined the tax to the latter."

In 1898 Congress again levied a special tax upon bankers. Act June 13, 1898, § 2, 30 Stat. 448. In this act we find that the distinction between corporations and individuals disappears, and bankers "using or employing" a capital were required to pay the special tax, graduated according to the amount of capital used and employed. Congress again undertook to define the word "banker," and followed almost verbatim the language of the act of 1864. It will be observed, therefore, that in 1898 Congress, in abolishing the distinction between corporations and individuals, sought to impose a tax according to the standard which had been in 1866, adopted for the tax upon individuals, namely, upon the capital used or employed by the banker. Treat v. Farmers' Loan & Trust Co., 185 Fed. 760, 108 C. C. A. 98.

In the act of 1914, now under consideration, Congress again imposed a special tax upon bankers, at the rate of $1 for each $1,000 of capital used or employed, and again it defines the term "banker" and follows identically the language of the act of 1898. Act Oct. 22, 1914, § 3, 38 Stat. 745–750.

The act of 1898 was several times considered by the courts of the United States. The first cases to be considered were Central Trust Co. v. Treat (C. C.) 171 Fed. 301, and Farmers' Loan & Trust Co. v. Treat (C. C.), 171 Fed. 302. The cases were almost identical, and an opinion was rendered only in the case of Central Trust Co. v. Treat. Lacombe, J., in his opinion said:

"It will be observed that the 'capital and surplus,' which is subjected to the tax is that which is used or employed by the banker; i. e., in the banking business."

In this case the court found that the capital and surplus were permanently invested in securities and were not actually used in the banking business. The plaintiff was allowed to recover the full amount of the tax which had been assessed against it and paid. These cases were later considered by the Circuit Court of Appeals, Second Circuit (Treat v. Farmers' Loan & Trust Co., 185 Fed. 760, 108 C. C. A. 98), where Ward, J., said:

"As the act only taxes the capital and surplus used or employed in banking, we think the Circuit Judge was entirely right in holding as matter of law that the plaintiffs, not using their capital or surplus in banking, were not subject to the payment of any tax thereon. No doubt they got credit by the amount of their capital and surplus, but Congress evidently intended to put corporations upon the same basis as individuals, and it would obviously be very unfair to tax an individual upon his whole fortune because he was using a part of it in the banking business."

The Farmers' Loan & Trust Company sought to recover taxes assessed upon and paid by it under the act of 1914. Anderson v. Farmers' Loan & Trust Co., 241 Fed. 322, 154 C. C. A. 202. Although in that case the Circuit Court of Appeals, Second Circuit, held that the plaintiff was not entitled to recover the tax paid, in the course of the opinion, apparently for the first time, it announced the doctrine that capital might, for the purpose of assessing the tax, be apportioned according to the relative amount of assets employed in banking and nonbanking business. The court pointed out that the plaintiff did a large trust business, the extent of which was not shown by the record; that it also did a large banking business, the extent of which was at least partially shown. Judge Hand, speaking for the court, stated:

"It would be possible to determine by further evidence the relative proportionate amounts of assets employed in banking and in trust business. If such a proportion were determined, and it appeared that one-half of the assets were employed in banking and the remaining one-half in trust business, it would seem to follow that one-half of the capital and surplus was employed in banking. The computation might be difficult but it seems to us entirely practicable."

And again he says:

"We do not regard any specific assets as constituting capital of the company. The capital, and in the same way the surplus and undivided profits, are the residue left after paying the obligations of the bank to its depositors, and any other indebtedness it may have. These claims may be satisfied out of any property, and the balance remaining, which is the capital, surplus and undivided profits, is to be imputed equally to all kinds of property which the trust company may possess. The proper way, therefore, to determine what part of the capital, surplus and undivided profits is employed in banking, is to find out what part of the total assets is so employed; when that is done, the same proportion of the capital, surplus, and undivided profits must be thus employed. Any other construction of the act seems to us unreasonable, and to involve the almost inevitable result that trust companies, which are close competitors of the national banks (at times outstripping them in banking business), will be found to be entirely free from a tax which the national banks will have to pay."

This method of apportioning the capital among the several departments of a corporation doing both banking and nonbanking business was followed in the case of Mayes v. United States Trust Co. (C. C. A.) 280 Fed. 25, where the court, after remarking that the plaintiff was liable to taxation on the amount of capital employed in the banking business, says:

"In the absence of proof of a more satisfactory method, the capital so employed was properly measured by the ratio which the assets employed in the banking business bore to the assets employed in the aggregate business"—citing Anderson v. Farmers' Loan & Trust Co., supra; Real Estate Title Insurance & Trust Co. v. Lederer (C. C. A.) 263 Fed. 667; Germantown Trust Co. v. Lederer (C. C. A.) 263 Fed. 672.

The doctrine of apportionment of capital among several departments in cases where a banker is engaged in nonbanking activities has apparently met with the approval of the United States Supreme Court. In the case of Fidelity & Deposit Co. of Maryland v. United States, 42 Sup. Ct. 511, 66 L. Ed. 948, decided May 29, 1922, Judge Brandeis, speaking for the court, said:

"If a company is engaged exclusively in banking all of its capital, however invested, may reasonably be held to be capital employed in banking without inquiry into the particular use to which it is put. * * * But where a company is lawfully engaged in several distinct businesses to the successful conduct of each of which credit is necessary, and the company's capital supplies such credit to each, the whole of this common capital cannot be deemed capital of a single department. Under such circumstances charges incident to common capital are, in accounting practice apportioned ordinarily among the several departments, and it may not be assumed that Congress in laying this tax intended to depart from the usage of business."

And again he observes:

"That apportionment of the capital of a company among its several departments can and should be made for purposes of taxation has been held by lower courts in cases arising under section 3 of the Act of Congress October 22, 1914, c. 331, 38 Stat. 745–750. * * * They recognize that the question whether the capital was used in the banking business, and if so to what extent, is a question of fact."

The history of the legislation imposing special tax on bankers and the adjudications in other jurisdictions justify the conclusion that the plaintiff in the instant case is liable to a tax measured by the same proportion of its capital, surplus, and undivided profits as the assets employed in its banking business bear to the total assets employed in all departments.

[2] We are still confronted with difficulties that are presented by the application of the rule of apportionment to the facts in the case. How shall the assets be apportioned between the banking and the other business of the plaintiff?

The plaintiff contends that the tax should be based on that portion of its capital which bears the same relation to the total capital as the assets employed in the three kinds of business enumerated in the statute bear to the total assets employed. In other words, it appearing from the findings of fact that it employed during each of the three years in question a substantial percentage of its assets in businesses

other than the following enumerated in the statute, to wit: (a) The business of opening credits by deposit, or otherwise, subject to draft, check, or order; (b) advancing money on stocks and other securities named; and (c) receiving for sale or discount stocks, bonds, and other securities—the plaintiff therefore asserts a right to recover in this action a like percentage of the taxes paid during the three years 1914, 1915, and 1916.

The plaintiff has assumed and maintained the burden of showing the average daily assets employed by it for the fiscal years in question in:

   (a) Loans on stocks, bonds, etc., bills of exchange, and notes;
   (b) Reserve bank balance;
   (c) Other bank balances;
   (d) Exchanges for clearing house;
   (e) Cash;
   (f) Loans on real estate;
   (g) Loans not secured by stocks, etc.;
   (h) Investments in stocks and bonds;
   (i) Bonds bought for purpose of resale;
   (j) Vaults;
   (k) Real estate.

The plaintiff concedes that items (a) to (e) inclusive, and a portion of (j) and (k), represent assets employed in the business of banking within the purport of the act, but claims that all the remaining assets are not so employed. If the word "banking," or the words "business of banking," are to be arbitrarily defined, so as to be limited to the three classes of transactions specified in the act, the plaintiff's claim is a valid one. If, on the other hand, the words are to be used in the general commercial sense, it is difficult to draw any distinction between assets used in making loans on notes secured by stocks or bonds and assets employed in loans on notes not so secured or on notes secured on real estate.

It becomes important, therefore, to determine whether, for the purpose of apportionment of assets, the words are to be given the statutory or the popular meaning.

There is language in opinions of the United States Supreme Court and of the lower courts which tends to support the proposition that Congress not only laid down the rule for determining who should be subject to the tax, but also laid down the rule for determining what was banking business for the purpose of the tax. See Richmond v. Blake, 132 U. S. 592–598, 10 Sup. Ct. 204, 206 (33 L. Ed. 481), where Mr. Justice Harlan says:

"That rule is expressed in words that leave no doubt as to what was the intention of Congress."

In United States v. Farmers' Loan & Trust Co., Fed. Cas. No. 15,070, the court states that:

"Congress having given an arbitrary meaning to the word 'banker' as used in this act, it follows in strict logical sequence that they have extended the same meaning to the terms 'business of banking.' The act would be no more explicit if it had said that any person or company having a place of business where money is advanced or loaned on stocks or

bonds, shall be deemed and regarded under this act to be engaged in the banking business."

In none of the cases where the doctrine of apportionment has been advanced has the precise question been presented. In Anderson v. Farmers' Loan & Trust Co. the case was remanded after judgment for plaintiff for full amount of tax, and how the assets were apportioned does not appear. In Mayes v. United States Trust Co. judgment for one-half of the tax paid was entered. The judgment was affirmed on the ground that there was evidence to support the conclusion that not more than half was employed in banking. In that case the apportionment was between the trust department and the bank department. While it is apparent that the apportionment was based, in part at least, on assets employed in the two departments, there is nothing in the case to show what business was transacted in the banking department. It is true that in the case of Fidelity Trust Co. of Baltimore v. Miles (D. C.) 258 Fed. 770, Judge Rose held that capital employed in buying and selling stocks, bonds and other securities for plaintiff's own account was employed in banking, but the judge was unable on the evidence to find that any determinable portion of the capital was not used in banking because it was used in buying and selling of securities. He remarked that:

"Most banks, state and national, do the same thing, as a usual and useful incident to their banking business."

But this case can hardly be cited as authority upon the legislative intent in fixing the tax upon "capital used or employed."

The case of Fidelity & Deposit Company of Maryland v. United States, supra, was remanded to the Court of Claims, with directions to make findings of fact with a view of determining whether any of the capital of the company was not used in the banking business, and the Court of Claims found that the Fidelity & Deposit Company of Maryland in its banking department used only funds of depositors, and that none of the capital or surplus was used or employed in the banking business of the company. It follows, therefore, that the court did not in this case resort to the method of apportionment recommended by Judge Hand in Anderson v. Farmers' Loan & Trust Co. or Judge Knappen in Mayes v. United States Trust Company.

The examination of the cases above cited leads to the conclusion that the statute, for the purposes of the tax, defines not only who are bankers, but also determines what constitutes banking business for the purpose of apportionment. The definition of "banker" having been the same in the acts of 1864, 1866, 1898, and 1914, and the language of the statute having been interpreted by the courts, it must be that Congress, in enacting the act of 1914, did so in the light of the judicial construction which had been placed upon similar language of prior statutes. If the capital employed is to be apportioned according to assets employed in banking business, it is for Congress and not for the courts to enlarge the meaning of the words "banking business" beyond the limits defined by the act as construed by the courts. Especially is this so in view of the well-recognized principle of law that

statutes imposing taxes are to be strictly construed, and are not to be extended by implication. Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211; United States v. Field, 255 U. S. 257, 41 Sup. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461; Hill v. Treasurer and Receiver General, 229 Mass. 474, 118 N. E. 891, L. R. A. 1918D, 337.

I make the following rulings based upon the request of the plaintiff:

1. As a matter of law, upon the facts set forth in the findings of fact, the taxes imposed upon the plaintiff by the statute in question should not have been computed upon the bases of its total capital, surplus, and undivided profits.

2. Evidence tending to show that during the fiscal years in question a part of plaintiff's capital, surplus, and undivided profits was not used or employed by it in any of the following kinds of business: (a) The opening of credits by the deposit or collection of money or currency, subject to be paid or remitted upon check, draft or order; (b) the advancing or loaning of money on stocks, bonds, bullion, bills of exchange, or promissory notes; or (c) the receiving for discount or sale of stocks, bonds, bullion, bills of exchange, or promissory notes —was properly admissible before the auditor.

3. The only business transactions which constitute banking within the meaning of the statute in question are as follows: (a) The opening of credits by the deposit or collection of money or currency, subject to be paid or remitted upon check, draft, or order; (b) the advancing or loaning of money on stocks, bonds, bullion, bills of exchange, or promissory notes; or (c) the receiving for discount or sale of stocks, bonds, bullion, bills of exchange, or promissory notes. That part of plaintiff's capital, surplus, and undivided profits which was not used or employed in one or more of those kinds of business transactions was not used or employed in banking, within the meaning of the statute, and could not lawfully be made the basis of the tax.

[3] 4. In the absence of evidence tending to prove the investment of the plaintiff's capital, surplus, and undivided profits in specific assets, it is to be presumed that its capital, surplus, and undivided profits were invested ratably in its total assets.

5. A proper method of determining the part of the plaintiff's capital, surplus, and undivided profits not used or employed in banking is to determine the part of its total assets not so used or employed, and when that is done the same proportion of its capital, surplus, and undivided profits must be taken as not so used or employed.

6. The assets of the plaintiff carried as "Real Estate Loans," "Unsecured Loans," "Coupon Notes," "Investments," "Stock, Federal Reserve Bank," "Bond Department Securities," nine-tenths of the assets carried as "Vaults," and such part of the assets carried as "Real Estate" as include one-half of the plaintiff's main office on Court street and the Washington street building, were not used or employed during any of the fiscal years in question by the plaintiff in the business of banking as defined by the statute.

7. It is the use or employment of the assets of the plaintiff, and not the source from which its assets were derived, which tend to prove

the actual use or employment of its capital, surplus, and undivided profits.

8. I rule that the defendant illegally collected from the plaintiff the following sums:

1. On April      27, 1915,  46.412 per cent. of  $10,233.34........$ 4,749.50
2. On September 20, 1915,  51.248 per cent. of   7,157.00........  3,667.68
3. On March       4, 1916,  51.246 per cent. of   7,157.00........  3,667.68
4. On September 12, 1916,  52.198 per cent. of   6,334.00........  3,306.09

$15,390.95

—which amount, with interest from the respective dates of collection, the plaintiff is entitled to recover from the defendant.

I make the following ruling, based upon the request of the defendant:

1. The plaintiff was a banker within the meaning of the act of Congress known as the "War Revenue Act," approved October 22, 1914.

The defendant requested other rulings, which are inconsistent with the foregoing opinion, and are therefore denied.