LEATHER MFRS.' NAT. BANK v. TREAT, Collector of Internal Revenue.

(Circuit Court, S. D. New York. June 13, 1902.)

1. INTERNAL REVENUE—WAR REVENUE ACT—CAPITAL INVESTED IN BANKING—NATIONAL BANKS—MEANING OF "SURPLUS" IN ASSESSMENT OF CAPITAL.

War Revenue Act 1898 (30 Stat. 448) § 2, provides that bankers, and persons and firms engaged in various other similar occupations, employing a capital not exceeding $25,000, shall pay a certain tax, and a certain additional amount for every $1,000 of capital above $25,000, and that in estimating capital surplus shall be included. *Held* that, inasmuch as the act does not refer exclusively to national banks, the word "surplus" as used in the act will not be restricted, in assessing a national bank, to the meaning given it in previous national bank legislation, as

covering only so much of the surplus profits as the board of directors have set apart for a reserve capital, but includes the entire surplus of assets over liabilities.

## On Demurrer to Complaint.

This is an action to recover the sum of $154, paid by plaintiff under protest as a tax claimed by defendant to be due on $77,796.14 under the war revenue act of 1898. This sum is called "Profit and Loss" on plaintiff's books, and "Undivided Profits" on the brief of plaintiff's counsel. It is alleged in the complaint that the books show the bank's financial condition on June 30, 1901, to be as follows: Its entire assets were $11,142,387.50; its entire liabilities, other than liability to stockholders, were $10,064,512.61. The capital stock was $600,000. The amount set aside by vote of the board of directors as surplus was $400,000. These two amounts, with the $77,796.14, make up a total surplus of assets over liabilities of $1,077,796.14. Defendant has demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action.

James M. Gifford, for plaintiff.
C. Duane Baker, Asst. U. S. Atty., for defendant.

LACOMBE, Circuit Judge (after stating the facts as above). The war revenue law of 1898 (30 Stat. 448) § 2, provides that:

"Bankers using or employing a capital not exceeding the sum of twenty-five thousand dollars shall pay fifty dollars; when using or employing a capital exceeding twenty-five thousand dollars, for every additional thousand dollars in excess of twenty-five thousand dollars, two dollars, and in estimating capital surplus shall be included. The amount of such annual tax shall in all cases be computed on the basis of the capital and surplus for the preceding fiscal year. Every person, firm, or company, and every incorporated or other bank, having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange or promissory notes are received for discount or sale, shall be a banker under this act."

The only question presented is whether the word "surplus," as used in the phrase "in estimating capital surplus shall be included," is to be construed as having some restricted meaning, or in its natural and ordinary sense, as including the entire overplus of assets over liabilities. In prior legislation regulating the creation and operation of national banks, the word "surplus" has been used as covering so much of the surplus profits as have by action of the board of directors been set apart as a sort of reserved or additional capital. If this section of the war revenue law dealt only with national banks, there would be much force in the argument that congress must be assumed to have used the word "surplus" with the same meaning as in the earlier acts specially relating to such banks. But when this section was passed, imposing a tax upon capital employed in banking, including surplus, the attention of congress was not confined to national banks, as may be seen from the careful enumeration of individuals affected by its provisions. It can hardly be assumed that congress used the word in this section intending that it should mean one thing when applied to a national bank and another thing when applied to a banking firm. Nor does it seem reasonable to hold that congress intended to require every one engaged in the banking business, except national banks, to

pay tax on the entire excess of assets over liabilities, while those corporations were required to pay only on part of such excess. And it would seem absurd to hold, though it seems to be a natural corollary from the propositions advanced by plaintiff, that a board of directors could set aside large sums each year from the profits, accumulating an additional fund equal perhaps to the capital, and used in the same way, and escape the tax upon it by the simple device of calling it "undivided profits." It would seem, rather, that congress used the word "surplus" in its ordinary sense, as indicating the amount left over after setting aside sufficient of the assets of a banker to meet his liabilities.

The demurrer is sustained.