GERMANTOWN TRUST CO. v. LEDERER, Internal Revenue Collector.

(Circuit Court of Appeals, Third Circuit. March 5, 1920.)

No. 2183.

1. INTERNAL REVENUE ⬗9—TRUST COMPANY MUST SHOW BY REAL TRANSACTIONS THAT CAPITAL IS NOT USED IN BANKING BUSINESS.

A trust company, which does a banking business with its other business, can avoid the tax levied by Act Oct. 22, 1914, § 3, on capital employed by bankers, only by showing by real transactions, and not as a mere distinction of bookkeeping, or artificial transactions, that it does not employ any of its capital, surplus, or undivided profits in its banking business.

2. EVIDENCE ⬗472(1)—CONCLUSIONS OF WITNESSES THAT TRUST COMPANY'S CAPITAL WAS NOT USED IN BANKING INCOMPETENT.

In an action to recover tax levied on a trust company under Act Oct. 22, 1914, § 3, imposing a tax of $1 for each $1,000 of capital used in banking, on the ground that none of the company's capital was used in its banking business, conclusions of witnesses that none of the capital was so used are conclusions as to the question for the jury to determine, and are incompetent.

3. INTERNAL REVENUE ⬥25—ASSESSMENT BY OFFICERS IS PRIMA FACIE VALID.

An assessment of internal revenue taxes on a trust company for use of capital in banking business is prima facie valid, and one attacking the assessment has the burden of showing that it was unlawful.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action by the Germantown Trust Company against Ephraim Lederer, collector of internal revenue for the First District of Pennsylvania. Judgment for defendant, and plaintiff brings error. Affirmed.

R. Stuart Smith, John G. Johnson, and Morgan, Lewis & Bockius, all of Philadelphia, Pa., for plaintiff in error.

Gordon Auchincloss, of New York City, Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY (first argument), and BUFFINGTON, WOOLLEY, and HAIGHT (second argument), Circuit Judges.

WOOLLEY, Circuit Judge. The defendant tax collector assessed a tax of $1,034 against the plaintiff trust company on its entire capital, surplus and undivided profits, under the Act of Congress, approved October 22, 1914, entitled, "An Act to Increase the Internal Revenue, and for other purposes" (38 Stat. at Large, 750), popularly known as the War Revenue Law. The trust company paid the tax under protest, and, after complying with the statutory formalities in such case, brought this suit to recover the money it had paid.

The provision of the cited statute under which the tax was assessed and collected defines a "banker," and provides that—

"Bankers shall pay [a special tax of] $1.00 for each $1,000 of capital used or employed, and in estimating capital surplus and undivided profits shall be included." Section 3.

In its Statement of Claim the trust company declared its right of action as follows:

"The said special tax of $1,034 was erroneously assessed and illegally and wrongfully demanded of the plaintiff, for the reason that *no part of the capital, surplus and undivided profits of the plaintiff* during the period commencing November 1, 1914, and ending June 30, 1915, *was used or employed by the plaintiff in the business of banking.* * * *"

Manifestly, an averment of this kind was necessary to maintain the action, and evidence that would support the averment and sustain a verdict rendered on it was essential to recovery. For lack of such evidence, and because of the plaintiff's attempt to prove the averment in a manner which the learned trial judge regarded as opposed by rules of evidence, the trial court entered judgment of non-suit and the trust company sued out this writ of error.

All errors assigned are directed to the court's rejection of evidence offered by the plaintiff, due to a conflict of wholly opposite theories on which the plaintiff sought to try its case and on which the

court insisted that the case should be tried. The material facts of the case, as developed by the evidence, admitted and rejected, are shortly these:

The Germantown Trust Company was a corporation of the State of Pennsylvania doing business with the general powers conferred upon trust companies by the laws of Pennsylvania, which include administering trusts, acting as surety, insuring titles, transacting a general real estate business, renting safe deposit boxes, receiving deposits of money, and loaning money on collateral. The last two activities admittedly constitute "banking" within the definition of the War Revenue Law in question.

The assets of the trust company embraced capital, surplus and undivided profits (which for convenience we shall refer to collectively as "capital"), trust funds (which for the purpose of this discussion we set aside), and money received on deposit. In the course of its business, the trust company held certain of these moneys in reserve and invested the balance in an office building and other real estate, furniture and fixtures, mortgages and judgments, bonds and stocks, time loans and call loans upon collateral, and in other investments too general to be classified. Except trust funds, it did not segregrate, separate, or distinguish its capital from its other assets used or employed in its several business departments, actually or as a matter of bookkeeping, nor did it segregate capital from deposits which came to it in the course of its banking business, except as the President and Finance Committee daily made a mental distinction between money which belonged to the company and that which came from and was regarded as belonging to its depositors, in order to be guided, by the rise and fall of the latter, in making and calling loans. Upon this distinction, however, the trust company at the trial endeavored to prove the essential averment of its Statement of Claim that "no part of the capital * * * was (during the tax period) used or employed * * * in the business of banking" by proving that all its capital was during that period "permanently invested in stocks, bonds, and other personal securities, and in mortgages, ground rents and real estate," as averred in its statement. But the trouble in this case grew out of the character of evidence it offered in proof of this averment. Stated briefly, the trust company proposed to prove that no part of its capital was used in banking by proving that all its capital was permanently invested. It endeavored to prove that all its capital was permanently invested by evidence that none of its depositors' money was so invested, seeking thereby two deductions of probative value, the first being, that investments not made with depositors' money must have been made with capital; and, second, that depositors' money not being permanently invested was the only money used or employed in the business of banking. Reduced to a few words, the theory on which the plaintiff endeavored to prove that its capital was not used or employed in banking was by inference to be drawn from proof that its depositors' money was not invested in permanent securities but was used in banking, relying, admittedly, on Farmers' Loan & Trust Co. v. Treat, Collector (C. C.) 171 Fed. 302; Id., 185 Fed. 760, 108 C. C. A. 98. In these cases the Circuit Court

for the Southern District of New York, and on review, the Circuit Court of Appeals for the Second Circuit, in construing a similar provision of the War Revenue Act of June 13, 1898, c. 448, § 2, 30 Stat. 448, held, that the capital and surplus of a trust company being permanently invested in stocks and bonds, and the banking business being done entirely on deposits, there was no capital and surplus of the bank used or employed in banking on which to assess the tax. A careful examination of these cases and of the earlier case of Leather Manufacturers' Bank v. Treat (C. C.) 116 Fed. 774, and 128 Fed. 262, 62 C. C. A. 644, shows that the Circuit Court of Appeals for the Second Circuit arrived at this conclusion because (the case first cited being tried on an agreed state of facts) the trial judge found as a fact that the capital and surplus were permanently invested, and were, in consequence, not used or employed in banking, and not taxable; while in the case last cited the court reached an opposite conclusion because banking was, confessedly, the sole business of the corporation.

[1] Since the Treat Cases were decided, and, indeed, since the instant case was first argued, the Circuit Court of Appeals for the Second Circuit has had occasion to construe the statute in question in Anderson v. Farmers' Loan & Trust Co., 241 Fed. 322, 154 C. C. A. 202, as has also this court in Real Estate Title Insurance & Trust Co. v. Lederer, Collector, 263 Fed. 667, ——— C. C. A. ——. In these cases both courts have held that the law taxes only so much of a banker's capital, surplus and undivided profits as is used or employed in banking, but how much that may be is a question of fact to be determined at the trial by appropriate evidence. In Anderson v. Farmers' Loan & Trust Co., and also in the case recently decided by this court, it was made clear that of a trust company's assets some part may be liable to the tax and some part may not, and that to distinguish the parts there must be some segregation, separation, or distinction between that of the bank's assets which is capital, surplus and undivided profits and that which is not, in order to show a distinction in their use and in their liability to be taxed. That distinction to be valid cannot be fanciful, mental, or merely one of bookkeeping, or based upon artificial transactions; it must be actual and be determined by real transactions.

Mr. Justice Bradley in Canal & Banking Co. v. New Orleans, 99 U. S. 97, 99 (25 L. Ed. 409), in speaking of a claim made by a bank that cash in the body of its assets is capital, pointedly inquired:

"Now, does it lie with the bank to put its finger on a particular item of assets * * * and say that this item, and no other item, constituted its capital at that time? Does this depend on the mere option of the bank? Why was not its cash on hand just as applicable to its deposits and other obligations as to its capital?"

What constitutes capital, and how and in what amount it is employed in different departments of a trust company, including that of banking, is a question of fact to be determined by the use to which its assets of different kinds are put, and established by evidence of real transactions, Real Estate Title Insurance & Trust Co. v. Lederer, Collector, 263 Fed. 667, —— C. C. A. ——, not by evidence merely that its permanent investments equal or exceed its capital (Anderson v. Farmers'

Loan & Trust Co., supra), or by inference arising from a claimed exclusive use of "depositors' money" in banking. Anderson v. Farmers' Loan & Trust Co., supra. Therefore deposits and capital are equally company assets, equally available·for the company's use, including that of investments, and equally liable for its debts.

[2] We find no offer of evidence in this case, such as in Real Estate Title Insurance & Trust Co. v. Lederer, supra, from which the jury could have found as a fact that none of the trust company's capital, or that only so much of its capital, had been used or employed in banking. The evidence offered in the present case, if admitted, would have shown nothing more than the general use of the trust company's assets without distinguishing between capital on the one hand and assets of a different kind on the other hand, and without showing whether the assets employed in banking were or were not capital, or how much was and how much was not capital, unless the opinion of witnesses as to whether the company's assets used in banking were capital or otherwise had been admitted as evidence. As this was the one question in the case, and as the jury were the sole judges of that question, the opinion testimony of witnesses was properly excluded.

[3] An assessment made by an official within his jurisdiction is prima facie valid. U. S. v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131. The decision of an assessor must stand until it can be affirmatively controverted. One attacking his assessment has the burden of showing that it is unlawful. Canal & Banking Co. v. New Orleans, supra; Anderson v. Farmers' Loan & Trust Co., supra. As the evidence offered in the case would not alone or in connection with the evidence admitted support a verdict, we are of opinion that the plaintiff did not sustain the burden which the law imposed upon it. The evidence which the trust company offered was, doubtless, the best and, perhaps, all it had. Being so, it failed because of infirmities in the evidence; not because the evidence was improperly submitted or the case improperly tried.

Finding no error in the trial, we direct that the judgment below be affirmed.