# FIDELITY & DEPOSIT COMPANY OF MARYLAND
## *v.* UNITED STATES.

.APPEAL FROM THE COURT OF CLAIMS.

No. 207. Argued April 21, 1922.—Decided May 29, 1922.

1. In fixing special bankers' taxes under the Act of June 13, 1898, c. 448, § 2, 30 Stat. 448, the assessment is not confined to that part of a banker's capital which is used in making loans or directly in other banking transactions, but includes capital held or deposited as a reserve or invested in securities and which serves to give credit to the banking business; and even where such securities have been designated as assets of another kind of business and physically segregated as such, they still may represent capital employed in the banking business if they continue to give it credit. P. 301.

2. But where a corporation is lawfully engaged in several distinct lines of business, including banking, for each of which its capital supplies necessary credit, the whole of the common capital cannot be deemed capital of a single department; there should be an apportionment, and the extent to which the capital is used in banking is a question of fact. P. 301.

3. In an action to recover taxes collected under this act, where the plaintiff corporation claimed that the business of its banking department was conducted without the use of its capital but solely on its depositors' money, and the Court of Claims, though requested, made no specific finding on that subject but other findings respecting the segregation of the plaintiff's several kinds of business, investments, accounting, etc., from which the extent, if any, to which the capital was used in banking could not be definitely ascertained, *held* that the case should be remanded for further findings. P. 303.

4. The limitation on actions in the Court of Claims on claims arising
    under the Refunding Act of July 27, 1912, is six years.  P. 303.
    *Sage* v. *United States*, 250 U. S. 33.
55 Ct. Clms. 535, remanded for further findings, etc.

APPEAL from a judgment of the Court of Claims dismissing a petition for recovery of money paid as bankers' special taxes under the Spanish War Revenue Act of June 13, 1898.

*Mr. George Sutherland*, with whom *Mr. Simon Lyon* and *Mr. R. B. H. Lyon* were on the briefs, for appellant.

*Mr. Assistant Attorney General Lovett*, with whom *Mr. Solicitor General Beck, Mr. Carl A. Mapes* and *Mr. B. H. Littleton* were on the briefs, for the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

This suit was brought in the Court of Claims by the Fidelity and Deposit Company of Maryland to recover the sum of $8,300, being the aggregate of amounts paid as bankers' special taxes for the years 1898 to 1901, under § 2 of the Spanish War Revenue Act of June 13, 1898, c. 448, 30 Stat. 448.  The company applied on November 22, 1913, for a refund, pursuant to the Act of July 27, 1912, c. 256, 37 Stat. 240, alleging that the taxes had been assessed and collected on plaintiff's capital, but that in fact none of it had been used or employed in the banking business.  The application was rejected by the Secretary of the Treasury on April 19, 1917; and this suit was begun on July 25, 1918.  The Government insisted that the taxes were legally payable and also that the claim was barred by the two-year statute of limitations.  The court dismissed the petition without opinion on authority of *Union Trust Co.* v. *United States*, 55 Ct. Clms. 424; and the case is here on appeal.  A motion to remand for further findings of fact made here by appellant earlier in this term was denied without prejudice.

By the Act of 1898 " bankers using or employing a capital not exceeding the sum of twenty-five thousand dollars " were required to pay a special tax of $50; and for every additional $1,000 the further amount of $2. The act provided, among other things, that " in estimating capital surplus shall be included "; and that " every person, firm, or company, and every incorporated or other bank, having a place of business where credits are opened by the deposit or collection of money or currency " subject to check, are to be deemed bankers. The Fidelity Company was unquestionably a banker; but banking was only one of four departments of its business. The others were: (a) the surety business—that is, acting as surety upon bonds conditioned for the faithful performance of duties by principals; (b) the safe-deposit business—that is, renting safe-deposit boxes for the safe keeping of valuables; (c) the business of acting as trustee under bond issues of other corporations. Whether the company had used or employed its capital in the banking business, within the meaning of the Act of 1898, is the main question presented.

The tax paid upon capital used or employed in banking was assessed for the year 1898 upon $25,000; for 1899 upon $1,125,000, and for 1900 and 1901 upon $1,500,000. The company claimed that it had not used any of its capital in banking during any of those years; and duly requested the lower court to find as facts that: " The entire business of the banking department was conducted solely on its depositors' money. Neither the capital stock nor surplus of plaintiff company was used or employed by or in the banking department." The court made no specific finding on that subject; and it overruled the motion for a new trial, in the supplement to which the company renewed its application for such findings, and also requested other specific findings in support of them. In the motion made here to remand the case for further find-

ings of fact the company requested that the Court of Claims be directed to find from the evidence: (1) Whether or not the banking department used only the funds of its depositors in the conduct of the business of that department; (2) whether or not any of the capital or surplus of the company was actually used or employed in the banking business, and, if so, what amount; and (3) what was the net income of appellant's surety or bonding department during each of the years in question. The court had already found the annual net income of the banking department; and it was asserted that in volume and profits the surety business was far more important than that of banking. If specific findings on these subjects are necessary to a proper determination of the case, it should clearly be remanded for that purpose; since the requests therefor were made seasonably in the lower court and here.

The Government contends that the findings requested are immaterial, because, as a matter of law, all of the capital (and surplus) was used or employed in banking. It argues that the words used and employed are not to be given the same meaning; that all the company's capital was, as matter of law, employed in the banking business, because all of it was, as matter of law, available for use in the banking department; and that all of it must in fact have enhanced the credit of the banking department, even if none of it was actually used in banking and the income of the banking department was derived directly from the investment of its deposits. In other words, the contention is that the act fixes the tax upon the banker " using or employing " a capital; and that a firm, or company, being a banker, can not escape, or reduce, the tax by showing that it is engaged in several lines of business and that, in fact, none, or only a part, of its capital was used specifically in its banking operations.

The findings of fact made by the Court of Claims were these: The company's capital stock and the surplus were

each $1,000,000 in 1898. Both were increased from time to time. In 1901 the former was $2,000,000, the latter $2,550,000. All the money derived from the sale of the capital stock and all the money of the surplus were permanently invested in real estate (including the office building at Baltimore in which the company's business was done) and in bonds, stocks and other securities. These investments were referred to and were designated on its books as "Capital Stock Investments." The securities and valuable papers representing them were segregated in a separate compartment of the company's vault in separate envelopes earmarked as capital stock. The financial operations concerning them were kept in a separate set of books distinct from the records of all other business transacted by the company. The business of the banking department was likewise kept separate, physically and as a matter of accounting, from all other business of the company. And the record of its operations was kept in a distinct set of books. The money received from deposits (which in 1901 exceeded $4,000,000) was invested in stocks and bonds which were kept in the vault in separate envelopes earmarked as such. The expenses of each department of the company's business were charged to the separate account of that department payable out of its earning. But physically expenses of the several departments may have been paid from a common fund. A part of the income from each department was maintained as cash and remained uninvested, part of the money being carried by the respective departments as counter cash and the balance being deposited in the company's various depositaries. The money so deposited was not segregated according to the source from which it came, though the source of the items comprising its total amount was recorded in the respective books of each department. The earnings of each department were carried to the undivided profits account of the company at the end of each year.

A portion of the office building was occupied by the banking department.

We cannot, on these findings of fact, say, as matter of law, that all the capital of the Fidelity Company was used in the banking business; nor can we say that at least the amount upon which the tax was assessed (which in no year was as much as one-half the company's capital) was so used. Capital may be employed in banking although it is not used strictly as working capital and none of it is used in making loans or directly in other banking transactions. Money of a banker held in the vault or with depositaries as a reserve is employed in banking as much as money loaned to customers. Capital invested in securities may be employed in banking even if its sole use is to give to the banker the credit which attracts depositors or to make it possible for him otherwise to raise money with which banking operations are conducted. And if such securities serve to give credit, they will continue, also in the legal sense, to be capital used in the banking business, even if they are designated by the company as assets of another department and physically segregated as such. Compare *Canal & Banking Co.* v. *New Orleans*, 99 U. S. 97. If a company is engaged exclusively in banking, all of its capital, however invested, may reasonably be held to be capital employed in banking without enquiry into the particular use to which it is put. Compare *Leather Manufacturers' National Bank* v. *Treat*, 116 Fed. 774; 128 Fed. 262. But where a company is lawfully engaged in several distinct businesses to the successful conduct of each of which credit is necessary, and the company's capital supplies such credit to each, the whole of this common capital cannot be deemed capital of a single department. Under such circumstances charges incident to common capital are, in accounting practice, apportioned ordinarily among the several departments; and it may not be assumed that Congress in laying this tax intended to depart from the usage of business.

With the apportionment of charges incident to capital used in common by several departments or branches of a business, both courts and legislatures have become familiar. Such apportionment is made when the tangible property of a corporation is scattered through different States and its intangible property is treated, for purposes of taxation, as distributed among the several States in which the tangible property is located. *Adams Express Co. v. Ohio,* 165 U. S. 194; 166 U. S. 185; *Cudahy Packing Co. v. Minnesota,* 246 U. S. 450; *Wells, Fargo & Co. v. Nevada,* 248 U. S. 165. Statutes are common by which foreign corporations are taxed upon the amount of their capital employed within the taxing State. Would it be contended that all the capital of the foreign corporation was taxable in each such State, because all of its capital is conceivably available for use in each and all is liable for debts incurred in each? The Act of 1898 applies to individual bankers as well as to corporations. Surely Congress could not have intended to tax as capital employed in banking the whole net property of an individual banker. Yet the possession of large wealth would probably aid him in attracting depositors; and all his property would, if required, be available legally, and possibly in fact, to meet requirements of his banking business. That apportionment of the capital of a company among its several departments can and should be made for purposes of taxation has been held by lower courts in cases arising under § 3 of the Act of Congress October 22, 1914, c. 331, 38 Stat. 745, 750, which is substantially the same as the provision here in question.[1] They recognize that

---

[1] *Anderson v. Farmers' Loan & Trust Co.,* 241 Fed. 322; *Title Guarantee & Trust Co. v. Miles,* 258 Fed. 771; *Real Estate Title Insurance & Trust Co. v. Lederer,* 263 Fed. 667. Compare *Central Trust Co. v. Treat,* 171 Fed. 301; *Treat v. Farmers' Loan & Trust Co.,* 185 Fed. 760; *Fidelity Trust Co. v. Miles,* 258 Fed. 770; *Germantown Trust Co. v. Lederer,* 263 Fed. 672.

the question whether the capital was used in the banking business, and if so to what extent, is a question of fact.

On the facts found by the Court of Claims we are unable to say that no part of the capital was used in the banking business or that there was used at least as much thereof as was represented by the taxes assessed. It follows that in order to determine what sums, if any, are recoverable, additional facts must be found. The request for further findings made by appellant was appropriate; and the case should be remanded with directions to make such findings; unless, as the Government contends, the claim sued on is barred by the two-year statute of limitations.

The contention is that the cause of action accrued on May 22, 1914, which is six months after presentation of the claim to the Commissioner of Internal Revenue; that the two-year statute of limitations prescribed by § 3227 of the Revised Statutes applies; that the fact that the claim was not rejected by the Treasury Department until April, 1917, is immaterial; and that therefore the suit, which was begun in July, 1918, is barred. This was the view taken by the Court of Claims for reasons theretofore given in *Kahn* v. *United States,* 55 Ct. Clms. 271   But, as we held in *Sage* v. *United States,* 250 U. S. 33, 39, the six-year statute of limitations applies to cases arising under the Act of July 27, 1912, c. 256.   See also *Henry* v. *United States,* 251 U. S. 393, 394.

*Motion to remand granted with directions to make new findings of fact as prayed and modify the judgment, if need be, to conform to this opinion.*