MALLEY, Collector of Internal Revenue, v. OLD COLONY TRUST CO.

(Circuit Court of Appeals, First Circuit. April 17, 1924. Rehearing Denied June 10, 1924.)

No. 1652.

1. **Internal revenue ⚖═9—Trust company held taxable on capital, surplus, and undivided profits used or employed in banking business only.**

Only so much of capital, surplus, and undivided profits of trust company engaged in several branches of business as is used or employed in·banking is subject to taxation, under Revenue Act Oct. 22, 1914, § 3 (1).

2. **Statutes ⚖═245—Senate resolution, letter of Secretary of Treasury, etc., held irrelevant and immaterial in construing revenue statute.**

In construing a revenue statute, resolution of United States Senate and letter of Secretary of Treasury, as they appear in Congressional Record, and an affidavit, *held* irrelevant and immaterial.

3. **Corporations ⚖═60—"Capital" defined.**

As respects property of corporation, "capital" applies only to property or amounts contributed by stockholders as the fund or basis of enterprise for which corporation was formed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital.]

4. **Internal revenue ⚖═9—Entire capital of corporation engaged solely in banking held capital employed in banking.**

Under Revenue Act Oct. 22, 1914, § 3 (1), if corporation is engaged exclusively in banking, all its capital, surplus, and undivided profits, however invested or used and employed, is security for deposits, and may reasonably be considered capital.

5. **Internal revenue ⚖═9—Burden on trust company to show portion of tax on assets not employed in banking.**

The burden is on trust company having ·several departments of business to prove what portion of tax levied on its capital, surplus, and undivided profits is on assets not used or employed in banking, under Revenue Act Oct. 22, 1914, § 3 (1).

6. **Internal revenue ⚖═9—Under Massachusetts statutes, savings deposits of trust company are secured by capital, surplus, and undivided profits of banking department.**

Under G. L. Mass. c. 172, §§ 62, 63, 65, deposits in savings department of trust company, equally with those in its banking department, are protected by capital, surplus, and undivided profits, and though savings banks having no capital stock are not subject to tax under Revenue Act Oct. 22, 1914, § 3 (1), assets employed in savings department of such bank are subject to tax.

7. **Internal revenue ⚖═9—Burden on trust company to prove part of capital, surplus, and undivided profits not used in banking held not sustained.**

In absence of evidence as to amount of assets of trust company used or employed in its trust, savings, and banking departments, *held*, that trust company did not sustain its burden of proving by preponderance of evidence what part of its capital, surplus, and undivided profits was not used or employed in banking, under Revenue Act Oct. 22, 1914, § 3 (1).

8. **Internal revenue ⚖═9—Participation in underwriting syndicates held banking under statute, but purchase of bonds not.**

Participation by trust company in "underwriting syndicates" *held* to be use of its capital, surplus, and undivided profits in banking, under Revenue Act Oct. 22, 1914, § 3 (1); but purchase of bonds for resale to customers is not.

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On Petition for Rehearing.

**9. Internal revenue 🗝9—Rule for dividing assets of trust company between its departments, for taxation of banking, stated.**

For taxation, under Revenue Act Oct. 24, 1914, § 3 (1), capital stock, surplus, and undivided profits may be divided between departments of trust company engaged in several branches of business, in ratio in which assets employed in each department bear to total assets, but division cannot be made among different kinds of business carried on by its banking department.

In Error to the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Action at law by the Old Colony Trust Company against John F. Malley, Collector of Internal Revenue. Judgment for plaintiff (288 Fed. 903), and defendant brings error. Reversed and remanded.

S. Duffield Mitchell, Asst. Sol. of Internal Revenue, of Washington, D. C. (Robert O. Harris, U. S. Atty., and Albert F. Welsh, Asst. U. S. Atty , both of Boston, Mass., and Nelson T. Hartson, Sol. of Internal Revenue, of Washington, D. C., on the brief), for plaintiff in error.

Ripley L. Dana, of Boston, Mass. (Stanley E. Gifford and Pillsbury, Dana & Young, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

JOHNSON, Circuit Judge. In this case the construction and application of section 3 of the Act of Congress approved October 22, 1914, 38 Stat. 750, known as the War Revenue Act, are in issue. This act is as follows:

"That on and after November first, nineteen hundred and fourteen, special taxes shall be, and hereby are, imposed annually as follows, that is to say:

"First. Bankers shall pay $1 for each $1,000 of capital used or employed, and in estimating capital surplus and undivided profits shall be included. The amount of such annual tax shall in all cases be computed on the basis of the capital, surplus, and undivided profits for the preceding fiscal year. Every person, firm, or company, and every incorporated or other bank, having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or sale, shall be a banker under this act: Provided, that any postal savings bank, or savings bank having no capital stock, and whose business is confined to receiving deposits and loaning or investing the same for the benefit of its depositors, and which does no other business of banking, shall not be subject to this tax."

The Old Colony Trust Company, herein called the plaintiff, is a Massachusetts banking corporation, and was during the years 1914, 1915, and 1916 engaged in banking in the city of Boston, and in connection with banking it had six distinct lines of business:

(1) A trust department, in which it carried on the business of acting as executors, trustees, or other fiduciary and as agent;

(2) A transfer department, in which it acted as transfer agent and registrar of stocks and registered bonds;

(3) A safe deposit department, in which it provided a method of safe-keeping for securities for the public and for itself;

(4) A reorganization department, in which it acted as depositary for stocks and bonds in reorganization proceedings;

(5) A bond department, in which it sold bonds and stocks to a limited extent; and

(6) A savings department, in which it received savings deposits and loaned and invested the same;

Its capital stock was $6,000,000; surplus, $8,000,000; undivided profits for 1914, $1,350,000; 1915, $1,198,890; 1916, $708,766.

It paid, under protest, a tax assessed upon its total capital, surplus, and undivided profits for each of the years in question.

The case was sent to an auditor under a rule authorizing him—

"to hear the parties and their witnesses, to examine their books, vouchers and evidence and to make report thereof with his findings of fact thereon to the court."

A jury trial was waived, and the evidence before the trial court consisted of the auditor's report, which is incorporated in the record, the testimony of one Joseph S. McCoy, in the form of an affidavit, which the plaintiff agreed might be admitted, subject to its objection that the facts contained therein were not material to the issue in the case, a resolution of the Senate of the United States and a letter of the Secretary of the Treasury, as they appear in the "Congressional Record" (volume 51, pt. 16, pp. 16376 and 16574), respectively, also admitted subject to the plaintiff's objection.

[1, 2] The first question raised by the assignments of error is: Were taxes for the years in question legally assessed upon the total capital stock, surplus, and undivided profits? We regard this question as settled by the United States Supreme Court in Fidelity & Deposit Co. v. United States, 259 U. S. 296, 302, where the court discusses the contention there made that all the capital of the bank was subject to the tax and said at page 302 (42 Sup. Ct. 511, 514, 66 L. Ed. 948):

"The act of 1898 applies to individual bankers as well as to corporations. Surely Congress could not have intended to tax as capital employed in banking the whole net property of an individual banker. Yet the possession of large wealth would probably aid him in attracting depositors, and all his property would, if required, be available legally, and possibly in fact, to meet requirements of his banking business. That apportionment of the capital of a company among its several departments can and should be made for purposes of taxation has been held by lower courts in cases arising under section 3 of the Act of Congress October 22, 1914, c. 331, 38 Stat. 745, 750, which is substantially the same as the provision here in question. They recognize that the question whether the capital was used in the banking business, and if so to what extent, is a question of fact."

The court then cites in a footnote Anderson v. Farmers' Loan & Trust Co., 241 Fed. 322, 154 C. C. A. 202; Title Guarantee & Trust Co. v. Miles (D. C.) 258 Fed. 771; Real Estate Title Insurance & Trust Co. v. Lederer (C. C. A.) 263 Fed. 667; and for comparison

Central Trust Co. v. Treat (C. C.) 171 Fed. 301; Treat v. Farmers' Loan & Trust Co., 185 Fed. 760, 108 C. C. A. 98; Fidelity Trust Co. v. Miles (D. C.) 258 Fed. 770; Germantown Trust Co. v. Lederer (C. C. A.) 263 Fed. 672.

The affidavit offered, as well as the resolution and the letter, were therefore irrelevant and immaterial. See Real Estate Title Insurance & Trust Co. v. Lederer (D. C.) 291 Fed. 265, affirmed by the Circuit Court of Appeals for the Third Circuit in 295 Fed. 672.

The other questions relate to rulings of the District Court:

First. That only those transactions constitute banking which fall under the definition of a banker given in the statute, and that that part of the plaintiff's capital, surplus, and undivided profits which was not used or employed by the plaintiff in banking, within the meaning of the statute, could not lawfully be made the basis of a tax.

Second. The assets of the plaintiff carried as real estate loans, unsecured loans, bond department securities, nine-tenths of the assets carried as vaults, and such part of the assets carried as real estate as include one-half of the plaintiff's main office on Court street and the Washington street building, were not used or employed during any of the fiscal years in question by the plaintiff in the business of banking, as defined by the statute.

Third. "In the absence of evidence tending to prove the investment of the plaintiff's capital, surplus, and undivided profits in specific assets, it is to be presumed that its capital, surplus, and undivided profits were invested ratably in its total assets."

Fourth. "A proper method of determining the part of the plaintiff's capital, surplus, and undivided profits not used or employed in banking is to determine the part of its total assets not so used or employed, and when that is done the same proportion of its capital, surplus, and undivided profits must be taken as not so used or employed."

Fifth. "It is the use or employment of the assets of the plaintiff, and not the source from which its assets were derived, which tend to prove the actual use or employment of its capital, surplus, and undivided profits."

The District Court has found that the assets and liabilities of the trust and savings departments were kept separate from its other assets and liabilities; that all other assets were subject to all its liabilities; that all the assets of the plaintiff were derived from money paid in by stockholders from deposits and its own earnings, and that some of these assets have been invested by the plaintiff in a variety of investments; that the plaintiff has never made any attempt to segregate these investments, so as to show that any particular investment represented money paid in by stockholders or by depositors or earnings; and that the debts of the plaintiff are represented by its deposit liabilities to individuals and corporations, amounts due to other banks, and a small amount included in an account entitled "Reserve for Taxes."

It has also found that the average daily assets of the plaintiff, exclusive of the assets in its savings department, for the three taxable years, were distributed among the following classes:

Real estate loans, secured loans, unsecured loans, reserve bank balances, other bank balances, exchanges for clearing house, cash, coupon notes, investments, bond department securities, vaults, real estate, and for the year 1916 stock of Federal Reserve Bank.

The auditor in his report stated that on the evidence before him he was unable "to find the average daily assets of the savings department

of the plaintiff, or the part thereof represented by any specific kind of assets, for any of the years in question," and the only finding made by the court in regard to assets in the savings department is the following:

"Of the assets in the savings department of the plaintiff on June 30, 1914, approximately $50,000 were represented by loans on collateral and by cash reserves. The remainder of the assets was invested in stocks and bonds, real estate and mortgages and unsecured loans."

The court ruled that, as evidence had been introduced from which inferences could be fairly drawn in regard to the amount of assets employed in the banking business by the plaintiff, it could be presumed or inferred that the part of its capital stock, surplus, and undivided profits which was employed or used by it in banking would bear the same ratio to its entire capital stock, surplus, and undivided profits that the assets so shown to be employed in banking bore to the total assets.

We accept the findings of fact made by the District Court which do not depend upon its rulings of law.

The rulings to which error has been assigned constitute, however, the basis for nearly all the findings of fact, and are not conclusive if these rulings were influenced by an erroneous view of the law.

The District Court, having found the total of the average daily assets of the plaintiff for the years in question, and their distribution under the headings named, then ruled that:

"The assets of the plaintiff carried as 'real estate loans,' 'unsecured loans,' 'coupon notes,' 'investments,' 'stock, Federal Reserve Bank,' 'bond department securities,' nine-tenths of the assets carried as 'vaults,' and such part of the assets carried as 'real estate' as include one-half of the plaintiff's main office on Court street and the Washington street building, were not used or employed during any of the fiscal years in question by the plaintiff in the business of banking as defined by the statute,"

and that only the assets falling under the following classifications were subject to the tax:

"(a) Loans on stocks, bonds, etc., bills of exchange, and notes;
"(b) Reserve bank balance;
"(c) Other bank balances;
"(d) Exchanges for clearing house;
"(e) Cash— * * *
"(j) Vaults; (one-tenth)
"(k) Real estate" (part).

Having found the assets falling under the classifications which it had ruled to be nonbanking, and the percentage of the total assets of the plaintiff which they constituted, the District Court ruled that the same percentage of the total capital stock, surplus, and undivided profits of the plaintiff was not used or employed in banking under the act.

In none of the cases cited by counsel or in those cited by the footnote to Fidelity & Deposit Co. of Maryland v. United States, supra, has there been any attempt at apportionment of the capital of a trust company among the different kinds of business transacted in its banking department; but the apportionment was made among the several departments of the trust company.

[3] By the act the tax is laid upon the capital, surplus, and undivided profits for the preceding fiscal year. Capital has a settled meaning when used with respect to the property of a corporation, and applies only to the property or amounts contributed by the stockholders as the fund or basis of the enterprise for which the corporation was formed. Bailey v. Clark, 21 Wall. 284, 22 L. Ed. 651; Leather Manufacturers' National Bank v. Treat, 128 Fed. 262, 62 C. C. A. 644.

Under the act capital also includes surplus and undivided profits. It is, however, only the capital "used or employed" in banking which is subject to tax.

By the act (Comp. St. § 6288) a banker is defined as one—

"(a) Having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or

"(b) Where money is advanced or loaned on stocks, bonds, bullion, bills of exchange, or promissory notes, or

"(c) Where stocks, bonds, bullion, bills of exchange, or promissory notes are received for discount or for sale."

If a corporation has a place of business where any business is transacted which falls under any one of these three classes, it is a banker, and liable to a tax upon its capital, surplus, and undivided profits to the extent that the same are "used or employed" in banking.

In the cases which have been before the courts it has been found exceedingly difficult to apportion the capital among several departments of a trust company.

In Anderson v. Farmers' Loan & Trust Co., 241 Fed. 322, the court said at page 326 (154 C. C. A. 202, 206) :

"The Farmers' Loan & Trust Company does a large trust business, the extent of which is not shown by the record. It also does a large banking business, the extent of which is at least partially shown. It would be possible to determine by further evidence the relative proportionate amounts of assets employed in banking and in trust business. If such a proportion were determined, and it appeared that one-half of the assets were employed in banking and the remaining one-half in trust business, it would seem to follow that one-half of the capital and surplus was employed in banking. The computation might be difficult, but it seems to us entirely practicable.

"The capital, surplus, and undivided profits, which counsel for the defendant in error insists were not employed in banking, but were permanent investments, we regard as employed in all the business of the bank of every kind. They were available for any use, equally with all other assets of the company, and were therefore employed both in the banking and other business."

In Real Estate Title & Trust Co. v. Lederer (C. C. A.) 263 Fed. 667, the trust company had four departments of business, viz.: Title insurance, trust, safety deposit, and real estate, and afterwards added banking as a fifth department, using in that only deposits received. It was there held that it was liable to a tax only on capital used and employed in its banking department, and in this case the proof showed that the banking department bore a relation of about one-fifth to the other departments of the trust company's business.

The crucial question considered by the court in this case was whether permanent investments, "which [were] segregated and kept separate from the money employed by the company in its banking busi--

ness, [were] in any way used or employed in the banking business," and the evidence tending to show "how the capital, surplus, and undivided profits of the company were invested during the taxable period was excluded," to which there was exception, and the court held that this evidence should have been admitted.

In Germantown Trust Co. v. Lederer (C. C. A.) 263 Fed. 672, the plaintiff was a trust company chartered by the laws of Pennsylvania and had several departments. In this case plaintiff endeavored to prove that all its capital was permanently invested by evidence that none of its depositors' money was so invested, and at page 675 the court said:

"In Anderson v. Farmers' Loan & Trust Co. [supra] and also in the case recently decided by this court [Real Estate Title Insurance & Trust Co. v. Lederer, supra] it was made clear that of a trust company's assets some part may be liable to the tax and some part may not, and that to distinguish the parts there must be some segregation, separation, or distinction between that of the bank's assets which is capital, surplus, and undivided profits and that which is not, in order to show a distinction in their use and in their liability to be taxed. That distinction to be valid cannot be fanciful, mental, or merely one of bookkeeping, or based upon artificial transactions; it must be actual and be determined by real transactions."

In Mayes v. United States Trust Co., 280 Fed. 25, the plaintiff carried on a general trust business and also received deposits, subject to check, and made loans secured by collateral or mortgage, and it was claimed that, the plaintiff having invested an amount equal to its capital, surplus, and undivided profits, its capital was wholly withdrawn from banking business. But the court said at page 27:

"These permanent investments equally secure plaintiff's creditors in the trust business and the banking business. Plaintiff was thus liable to taxation on the amount of capital employed in the banking business, and, at least in the absence of proof of a more satisfactory method, the capital so employed was properly measured by the ratio which the assets employed in the banking business bore to the assets employed in the aggregate business. * * * The difficulty lies in apportioning the assets between the trust and the banking businesses. The assessment was presumptive evidence of its correctness. It was open to the plaintiff, however, to show the contrary; but the burden rested upon it to do so, and, if it failed, it was not entitled to recover."

In that case the apportionment attempted to be made was between the assets employed in the trust business and those employed in the banking business. The plaintiff's president, the only witness in the case, testified that the amount of the trust business during the two fiscal years, as compared to the amount of the banking business, was as six to one; but the court found that there was substantial evidence tending to support the conclusion that not more than one-half plaintiff's capital was employed in banking, and thus the defendant was not prejudiced by the finding of the court below, which was that one-half of its capital was employed in banking.

[4] In the present case, the District Court having ruled, and we think correctly, that only the capital used or employed in banking, under the definition of a banker in the act and not under the usual and commercial acceptance of the word, was subject to the tax, it then ruled that certain assets of its banking department were not used

or employed in banking, and that capital might be apportioned for the purpose of taxation under the act, largely in accordance with the use of assets in that department.

This latter ruling was erroneous, for under it a bank which had only a banking department, under the definition in the act, might escape taxation on a large part of its capital stock, surplus, and undivided profits, even if it were a national bank.

While it is only that part of the capital, surplus, and undivided profits which is used or employed in banking that is subject to the tax, yet, in the case of a corporation which has only a banking department, "where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order," its entire capital stock, surplus, and undivided profits are used or employed as security for its depositors, whom it serves to attract, and this is true, whether this capital assumes the form of permanent investments, reserves, or cash. Its assets could not be limited to those used in making loans or in other transactions. It is its capital which gives it standing in the financial world and brings it depositors, and it is all used and employed in banking.

In Fidelity & Deposit Co. of Maryland v. United States, supra, the court said at page 301 (42 Sup. Ct. 511, 513):

"Capital may be employed in banking, although it is not used strictly as working capital, and none of it is used in making loans or directly in other banking transactions. Money of a banker held in the vault or with depositaries as a reserve is employed in banking as much as money loaned to customers. Capital invested in securities may be employed in banking, even if its sole use is to give to the banker the credit which attracts depositors, or to make it possible for him otherwise to raise money with which banking operations are conducted. And if such securities serve to give credit, they will continue, also in the legal sense, to be capital used in the banking business, even if they are designated by the company as assets of another department and physically segregated as such."

See, also, Germantown Trust Co. v. Lederer (C. C. A.) 263 Fed. 672, 675; Canal & Banking Co. v. New Orleans, 99 U. S. 97, 25 L. Ed. 409.

[5] The burden rested upon the plaintiff to show what portion of the tax levied upon its capital, surplus, and undivided profits, was not used or employed in banking. United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Dollar Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80; Haffin v. Mason, 15 Wall. 671, 21 L. Ed. 196; Northern Pacific R. R. v. Clark, 153 U. S. 252, 14 Sup. Ct. 809, 38 L. Ed. 706; Fidelity & Deposit Co. of Maryland v. United States, supra.

[6] Depositors in the savings department, equally with those in the banking department, were protected by the capital stock, surplus and undivided profits of the plaintiff. While savings banks having no capital stock are not subject to the tax, it cannot be said that the savings department of the plaintiff had no capital stock.

G. L. Mass. c. 172, § 63, provides, in substance, that the capital stock of a trust company, with liability of stockholders, is security for deposits in a savings department, and depositors have an equal claim

with other creditors upon the capital and other property of the corporation in addition to the security provided by reserves and a guaranty fund.

Section 62 of the same chapter also provides that deposits and investments or loans in the savings department—

"shall be appropriated solely to the security and payment of such deposits, shall not be mingled with the investments of the capital stock or other money or property belonging to or controlled by such corporation, or be liable for the debts or obligations thereof until after the deposits in said savings department have been paid in full. * * * "

Section 65 of the same chapter provides that income derived from the investment of funds in the savings department—

"after deducting the expenses and losses incurred in the management thereof and such sums as may be paid to depositors therein as interest or dividends, shall accrue as profits to such corporation and may be transferred to its general funds."

Money received in the savings department subject to draft or order was held under the act of 1864 to constitute banking.

In Oulton v. Savings Institution, 17 Wall. (84 U. S.) 109, 21 L. Ed. 618, it was held, under the Internal Revenue Act of 1864, as amended by the Act of July 13, 1866, in which identically the same language is used in defining a banker as is used in the act of 1914, that "an entry made in the depositor's passbook of a deposit or payment is a certificate of deposit or check or draft."

In a division of the plaintiff's assets between those employed in banking and its other departments, the assets employed or used in the savings department must be considered, in order to ascertain the part of its entire capital stock, surplus, and undivided profits which was employed in banking and therefore subject to the tax under the ruling of the court below.

The assets employed in the savings department were not reported by the auditor nor found by the court, and there was no finding except that, on June 30, 1914, approximately $50,000 of the assets of the savings department "were represented by loans on collateral and by cash reserves," and that "the remainder of the assets was invested in stocks and bonds, real estate and mortgages and unsecured loans," the total assets could not be found, and there was no evidence from which inferences might be fairly drawn as to the amount of these assets which was used in banking as defined by the act.

Under G. L. Mass. c. 172, §§ 55 and 78, the capital stock of the plaintiff, with the liabilities of its stockholders thereunder, is held as security for creditors in its trust department, and such creditors have an equal claim with other creditors upon the capital and other property of the corporation, in addition to the security afforded by a trust guaranty fund.

[7] In the present case there was no evidence in regard to the extent of the business of the trust department of the plaintiff, nor was there any evidence introduced from which inferences might be fairly drawn in regard to the same. Without such evidence, as well as evidence of the assets in the savings department, it is impossible to de-

termine what part of the capital of plaintiff (including capital, surplus, and undivided profits) was employed in banking, and what part in the savings and trust departments.

The District Court has found that nine-tenths of the value of the plaintiff's vaults and a certain part of its real estate were not used in banking. These were findings of facts, which we accept as binding upon us. It has also found that assets listed, as "bond department securities" were not used in banking. In regard to these, the court found:

"(16) The average daily assets of the plaintiff, as set forth in paragraph 7 hereof, described as 'bond department securities,' were bonds purchased for the purpose of resale to customers. In come cases the plaintiff bought bonds already issued for the purpose of resale at a profit. In other cases the plaintiff participated in underwriting syndicates for the purpose of floating the bonds in question, and sold them either before or after they were issued. While the bonds were held by the plaintiff it collected the income and advertised the bonds. These assets were reported to the bank commissioner of Massachusetts as securities held and owned in the plaintiff's banking department."

[8] So far as the plaintiff participated in "underwriting syndicates," we think it was using its capital, and this would constitute banking under the act, but that a purchase of bonds for resale to its customers would not. Richmond v. Blake, 132 U. S. 592, 598, 10 Sup. Ct. 204, 33 L. Ed. 481.

Without a determination of the total assets used by the plaintiff, the proportionate part of the same which the vaults, the real estate not used in banking, and the bond department securities not so used represent cannot be ascertained.

The plaintiff has not sustained the burden of proving by a preponderance of the evidence what part of its capital, surplus, and undivided profits was not used or employed in banking.

The judgment of the District Court is reversed, with costs in this court to the plaintiff in error, and the action is remanded to the District Court for further action not inconsistent with this opinion.

## On Petition for Rehearing.

PER CURIAM. A petition for rehearing has been filed in this case in which it is stated that our opinion does not clearly state upon what basis a division of the capital stock, surplus, and undivided profits can be made for the purposes of taxation under the statute.

[9] In order that there may be no doubt as to this, we repeat what we think is stated in the opinion, that, for the purposes of taxation under the statute, a division of the capital stock, surplus, and undivided profits may be made between the several departments of the Old Colony Trust Company in the ratio which the assets employed in each bear to the total assets, but that such division cannot be made among the different kinds of business carried on in its banking department.

The burden was on the trust company to show the part of its assets used in its departments outside of its banking department. There was no evidence in regard to the assets employed in the trust depart-

ment or in the savings department, and without such evidence there could be no division of the capital, surplus, and undivided profits between its banking department and its other departments for the purposes of taxation, and therefore the trust company has failed to maintain the burden cast upon it.

Whether the participation of the trust company in underwriting securities constituted banking or not would depend upon whether it became the owner of the bonds or stock which it underwrote, or whether it acted as an agent in so doing. Under Richmond v. Blake, 132 U. S. 592, 10 Sup. Ct. 204, 33 L. Ed. 481, if it bought bonds and stock for the purpose of resale to its customers, this would not constitute banking; but, if it bought and sold bonds and stock for a commission as the agent of others, it would, under the same authority, be using its capital in banking.

The auditor's report does not disclose the actual nature of the underwriting agreements into which the trust company entered in underwriting securities, but this evidence may be supplied at a future trial.

Having made this statement, we think a rehearing is unnecessary, and the petition is denied.