### HAMPTON & L. F. RY. CO. v. NOEL, Collector of Internal Revenue.

(District Court, E. D. Virginia. June 13, 1924.)

No. 3957.

**1. Internal revenue ⬩⬩⬩7—Income taxes; amortization deduction by corporations for facilities acquired to aid in prosecution of war.**

Revenue Act 1918, § 234a (8), being Comp. St. Ann. Supp. 1919, § 6336⅛pp, allowing an amortization deduction to corporations in case of "equipment * * * acquired on and after April 6, 1917, for the production of articles contributing to the prosecution of the present war," does not include railway equipment, though acquired and used to facilitate transportation required by the government in prosecution of its war activities.

**2. Internal revenue ⬩⬩⬩5, 25—Claim for exemption must be clearly made out.**

An assessment made by an official within his jurisdiction is prima facie valid, and a claim to exemption must be clearly made out.

**3. Statutes ⬩⬩⬩217—Reports of congressional committees may be looked to for intent, where language is obscure.**

Where wording of statute is obscure, legislative intent may be ascertained by looking to reports of committees having legislation in charge.

At Law. Action by the Hampton & Langley Field Railway Company against John C. Noel, Collector of Internal Revenue. Judgment for defendant.

John Weymouth, of Hampton, Va., for plaintiff.

Paul W. Kear, U. S. Atty., and Lester S. Parsons, Asst. U. S. Atty., both of Norfolk, Va., and T. Ellis Allison, Special Atty. Bureau of Internal Revenue, of Washington, D. C., for defendant.

GRONER, District Judge. This is an action brought by the plaintiff to recover back from the United States the sum of $4,497.13, income and excess profits taxes paid for the year 1918, and alleged to have been erroneously assessed and collected under the provisions of the Revenue Act of 1918 (40 Stat. 1057). By agreement of the parties the case was submitted to the court on the declaration, answer, and an agreed statement of facts.

The facts show that plaintiff, hereinafter spoken of as the railway, is a public service corporation, organized under the laws of Virginia in February, 1917. Between the middle and latter part of 1917 it built approximately 3¼ miles of standard gauge railroad, starting at Hampton, Va., intersecting the Chesapeake & Ohio Railway at the edge of the town, and running to the outer boundaries of Langley Field Aviation Station, belonging to the United States. At this terminus there was a physical connection with the government tracks running into the aviation field. At its inception the railway used rolling stock leased

from the Newport News & Hampton Railway, Gas & Electric Company, but at the peak of war activities the latter company, finding itself in need of all its equipment, withdrew its rolling stock, necessitating the purchase by the railway for its own account of such equipment as its business demanded. Accordingly it purchased, after April 6, 1917, two electric passenger cars and one electric locomotive, paying in the aggregate therefor the sum of $34,400. The passenger cars were used in hauling passengers from Hampton to Langley Field, and the locomotive in drawing freight cars received from the Chesapeake & Ohio Railway from the point of physical connection with that company's line to the outskirts of the aviation field, where the cars were delivered to the government authorities and drawn by means of a steam locomotive, operated by the United States Army, to the desired points in the aviation field.

[1] In filing its income return for the year 1918 the railway deducted the sum of $6,000 for amortization for war facilities, under section 214 (a) (9) of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛g). The amortization was claimed on account of the purchase price of the cars and locomotive. The government disallowed the claim and collected the taxes, which were paid under protest, and this action was brought after the usual demand for refund and refusal, and the lapse of the necessary time. The section of the act in question provides as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

⁎   ⁎   *   ⁎   ⁎   ⁎   ⁎   *   ⁎   *

"(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous acts of Congress as a deduction in computing net income. At any time within three years after the termination of the present war the commissioner may, and at the request of the taxpayer shall, re-examine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the taxes imposed by this title and by Title III for the year or years affected shall be redetermined and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

The act as originally passed by the House (H. R. 12863), in respect to amortization, did not contain the language relating to ships found in the statute as finally adopted, and in the report of the Senate committee on finance, dated December 6, 1918, it is said:

"In the paragraph relating to amortization allowance, section 214 (a) and section 234 (a) 8, it was feared that the language was not broad enough to include vessels devoted to war purposes, and provision has therefore been made for amortization allowance in the case of vessels constructed or acquired on or after April 6, 1917, for the transportation of articles or men contributing to the prosecution of the present war."

It is undoubtedly true in this case that the railway cars and locomotive may be accurately described as "equipment." It is equally true that such equipment was acquired after April 6, 1917, and I think it may also be conceded that its use thereafter was to facilitate the transportation of freight and the carrying of passengers to and from the government aviation field. It becomes necessary, therefore, to determine whether it was equipment "for the production of articles contributing to the prosecution of the present war," and it is obvious that, if this be true, nearly every railroad company in the United States, which, by reason of the unusual burdens on commerce incident to the carrying on of the war, had acquired extra equipment after the 6th of April, 1917, would come within its terms; and the decision is therefore one of importance, and apparently the question has not previously reached the courts. Two rulings on the question have been made by the Bureau. One, by the Solicitor, is contained in Cumulative Bulletin No. 5, July-December, 1921, at page 159; the other is by the chairman of the Committee on Appeals, and is contained in Internal Revenue Bulletin of October 22, 1923, volume II, No. 29, at page 4. They are in conflict, and neither is especially helpful.

[2] It has been repeatedly decided that an assessment made by an official within his jurisdiction is prima facie valid. Germantown Trust Co. v. Lederer (C. C. A.) 263 Fed. 672, and cases there cited. It has likewise been decided, in Bank of Commerce v. Tennessee, 161 U. S. 134, 146, 16 Sup. Ct. 456, 40 L. Ed. 645, that a claim for exemption from taxation must be clearly made out. Doubt and ambiguity are resolved against the claimant, and the exemption will only be sustained when the language plainly and clearly confirms the right to it. The railway, in the case at bar, was a common carrier, and its entire business was in furnishing transportation services. If the language of the act embraced all corporations aiding in or contributing to the prosecution of the war, it might well be argued that the claim to the exemption was justified, for undoubtedly the railway, or some kind of railway or means of transportation, was necessary in the work prosecuted by the government at Langley Field. It may also be assumed, I think, that the railway owes its existence to this same condition; and doubtless, also, the purchase of the cars would have been unnecessary, except for the heavy drain of the war upon the other railroad, from which the equipment originally was expected to be obtained on a rental basis; and, while these considerations are all meritorious, the question of whether they come within the purview of the statute is still unanswered.

The language of the statute, read in its ordinary meaning, is plain and unambiguous. It requires, to come within its terms, that the person claiming the exemption shall have produced articles contributing to the prosecution of the war. Suppose it be admitted that the railway did "produce" transportation, rather than furnish it, it is still difficult, if not impossible, to regard the word "articles" as synonymous with "transportation." The intent of Congress is, of course, the determining factor, and the intent should be ascertained from the language used, where it has a well-known and equally well recognized

meaning; and, as already pointed out, the application of this rule would defeat the railway's claim.

[3] If, however, it be conceded that the wording of the act is obscure, it is permissible to seek the legislative intent, as expressed by the authors of the law, as a guide. In Duplex Printing Co. v. Deering, 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, Mr. Justice Pitney, speaking for the court, after expressing the view that it is well established that debates in Congress are not a safe guide, said:

"But reports of committees of House or Senate stand upon a more solid footing, and may be regarded as an exposition of the legislative intent in a case where otherwise the meaning of a statute is obscure."

Congress, in the applicable provision of the act in question, doubtless had in mind to make provision for those cases of enlargement, at war prices, of plants scattered from one end of the country to the other, engaged in the production of war material and equipment of one kind and another. That it. did not intend to extend the same privilege to the great transportation systems of the country is, I think, definitely shown in the report of the Senate committee on finance, quoted supra, by which vessels engaged in the transportation of war material, etc., were included within the terms of the section. The specific inclusion of the one, it seems to me, necessarily implies an intent to exclude the other.

The claim must therefore be denied, and judgment rendered for defendant.